338 F.2d 229
 The TRAVELERS INSURANCE COMPANY, Appellant,
v.
Mrs. Ada Z. BROWN, Individually, and as Natural Tutrix of Ambrose Floyd Brown, Jr., Thomas Harry Brown, Sandra LaVerne Brown and Vickie Helen Brown, Appellee.
v.
John W. SCOTT, Appellant,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellee.
 No. 21239.
 United States Court of Appeals Fifth Circuit.
 October 16, 1964.
 Rehearing Denied January 4, 1965.
 
 COPYRIGHT MATERIAL OMITTED C. W. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for The Travelers Ins. Co., defendant-appellant.
 Calvin E. Hardin, Jr., Wallace A. Hunter, Baton Rouge, La., for plaintiffs-appellees-cross-appellants, David E. Cooley, Slidell, La., of counsel.
 Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and McRAE, District Judge.
 WISDOM, Circuit Judge.
 
 
 1
 This industrial accident tort case, a diversity action arising in Louisiana, raises issues of pleading, the interpretation of an insurance policy, and the sufficiency of evidence supporting the judgment. The district court held that the amendment of the complaints was only "clarifying" in nature and was thus not prescribed by limitation. It held that the plaintiffs were not barred by the "cross-employee" exclusion in the defendant's public liability insurance policy. Finally, in a trial without a jury, the court found that the insured was negligent and the plaintiffs were free from contributory negligence. The court awarded judgments for the plaintiffs in the total amount of $91,761.83. We affirm.
 
 I.
 
 2
 Ethyl Corporation produces chlorine, a deadly gas two or three times heavier than air, at its plant in Baton Rouge, Louisiana. Ethyl uses various processes to purify its chlorine. In one of the processes the chlorine is drawn through "acid towers", steel cylinders twenty-five feet high and three feet in inside diameter. In order to dehydrate the chlorine, the gas is drawn through trays in the tower of concentrated sulphuric acid.
 
 
 3
 The acid resistant bricks that line the "acid towers" are eventually corroded away and periodically must be replaced. May 7, 1959, Ambrose Floyd Brown, a brickmason, and John Scott, a brickmason's helper, were engaged in rebricking the interior wall of Ethyl "Acid Tower A-11". The only means of entering an acid tower is from the top; Brown was lowered into the tower by a hoisting device operated by Scott, who remained at the top of the tower.
 
 
 4
 During the repair time, "Acid Tower A-11" of course was not in use for chlorine purification. Nevertheless, while Brown and Scott were at work some chlorine gas escaped into the tower at a point around fifteen feet from the top of the tower. The gas formed a cloud and, being heavier than air, descended in the tower. Both Brown and Scott inhaled some chlorine gas and began to choke; neither was able to make use of the small carbon respirator mask that had been provided. Instead of attempting to rescue Brown, Scott ran for help. In a matter of seconds two Ethyl workmen, wearing their gas masks, managed to pull Brown from the tower. Both Brown and Scott were immediately hospitalized. Brown subsequently died.
 
 
 5
 Scott filed suit September 18, 1959. Mrs. Brown, individually and as the natural tutrix of the children for Ambrose Brown, filed her complaint three days later. The complaints alleged negligence on the part of the Ethyl Corporation and were filed under the Louisiana Direct Action Statute, LSA-R.S. 22:655, against Ethyl and The Travelers Insurance Company as "the public liability insurer of Ethyl Corporation".
 
 
 6
 November 6, 1959, both the defendants moved to have the complaints dismissed on the ground that the plaintiffs' sole remedy was in workmen's compensation under the provisions of LSA-R.S. 23:1032[1] and LSA-R.S. 23:1061.[2] Both Brown and Scott were on the payroll of George A. Caldwell, a large industrial building contractor. Caldwell was engaged to perform brick maintenance work for the Ethyl Corporation.
 
 
 7
 May 2, 1960, Hartford Accident & Indemnity Company, the workmen's compensation insurer of George A. Caldwell, moved to intervene to recover compensation paid to the plaintiffs according to the provisions of LSA-R.S. 23:1101.[3] The amounts paid were stipulated and the intervention was allowed.
 
 
 8
 August 16, 1960, the plaintiffs moved for leave to amend their complaints. The original complaints cited Travelers as the public liability insurer of Ethyl; the amended complaint alleged that Travelers was "the public liability insurer of Ethyl Corporation, and its executive officers, and directors and stockholders and its other agents, servants and employees". The injuries to the plaintiffs allegedly resulted from the negligence of the above named group. The plaintiffs filed their amended complaints without opposition on October 17, 1960.
 
 
 9
 November 18, 1960, the defendants moved again for dismissal. Again they urged that the remedy against Ethyl and its insurer through workmen's compensation was exclusive. The motion further contended that a suit against Travelers as the insurer of anyone other than the Ethyl Corporation itself was prescribed by the Louisiana one year statute of limitations, LSA-C.C. art. 3536.
 
 
 10
 January 24, 1961, the district court granted summary judgment dismissing the claims against Ethyl and Travelers as the insurer of the Ethyl Corporation. The court held that Brown and Scott, although on Caldwell's payroll, were performing work that was a part of Ethyl's trade, business, or occupation as those words are used in LSA-R.S. 23:1061. This holding would limit the plaintiffs' remedy against Ethyl to a claim under the workmen's compensation law.
 
 
 11
 At the same time, the district court refused Travelers' motion to dismiss based upon prescription. The court construed the amended complaint to be clarifying in nature; it rejected the notion that Travelers as the insurer of Ethyl's management and employees was a party different from Travelers as insurer for the Ethyl Corporation. As embodying only a clarifying change, the amended complaint related back to the date of original filing, which was well within the allotted time.
 
 
 12
 January 9, 1963, defendant moved for summary judgment on the ground that its policy afforded no recovery for Ethyl employees when injured by the negligent acts of fellow employees. January 29, plaintiffs moved for a jury trial.
 
 
 13
 February 12, 1963, the court denied both motions; the case was tried without a jury in May of 1963. The District Judge found negligence on the part of Ethyl employees and a freedom from negligence on the part of the plaintiffs. Of the $91,761.83 that was awarded in judgments, $11,577.25 was awarded to Hartford as intervenor. The defendants appealed these judgments. The plaintiffs appealed from the summary judgment dismissing the claim against Ethyl and against Travelers as the insurer of Ethyl.
 
 II.
 
 14
 In this appeal, Travelers first attacks the denial of the motion to dismiss based on prescription. It urges that the question of "relation back" should be controlled by Louisiana law according to the rationale of Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079, and Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.
 
 
 15
 The Federal rule on the "relation back" of amendments to pleadings, as embodied in Federal Rule 15(c), is permissive. As long as the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint, there will be no bar to amendment; even new defendants and new theories of recovery will be allowed. See Tiller v. Atlantic Coast Line R. Co., 1945, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465; Hirsch v. Bruchhausen, 2 Cir. 1960, 284 F.2d 783; Bowles v. Tankar Gas, D.C. Minn.1946, 5 F.R.D. 230; 1A Barron and Holtzoff, Federal Practice and Procedure § 448.
 
 
 16
 It is unnecessary for us to decide whether the state or federal rule should apply. It is possible to accept the more restrictive rule of Louisiana, set forth as defendants contend in Martin v. Mud Supply Co., 1960, 239 La. 616, 119 So.2d 484, and still allow the amendment in question to relate back to the time of original filing.
 
 
 17
 In Martin v. Mud Supply Co., the plaintiff instituted suit against the Mud Supply Co. after an automobile that it owned was involved in a collision. The complaint alleged that the automobile was being used in the course and furtherance of the defendant's business. After the prescriptive period had expired, the plaintiff attempted to amend his complaint to include the public liability insurer for Mud Supply Co., as a party defendant. When the court determined that the automobile was not being used in the scope of Mud Supply Co.'s business, the plaintiff attempted to hold the insurer on the omnibus clause in its policy.[4] The plaintiff asserted that the insurer's close connection with Mud Supply and its actual knowledge of the claim should act to interrupt prescription. The Supreme Court of Louisiana rejected this argument. It read LSA-R.S. 9:5801:
 
 
 18
 "The filing of a suit in a court of competent jurisdiction shall interrupt all prescriptions affecting the cause of action therein sued upon, against all defendants, including minors and interdicts."
 
 
 19
 to apply only to defendants named as party defendants. To support the conclusion that even a close connection with a party defendant and actual notice of the proceedings cannot satisfy this requirement, the Court quoted from Hill v. Barlow, 6 Rob., La., 142:
 
 
 20
 "One of the well known rules relative to prescription is, that it becomes interrupted when the party in favor of whom the time necessary to acquire it is running, has been cited to appear before a court of justice, on account of the right or claim to which the prescription would apply. This is called a `legal interruption', and it matters not whether the suit has been brought before a court of competent jurisdiction or not. * * It is therefore necessary that the party should be cited; and it cannot be controverted, that any other means of knowledge of the proceedings instituted against him, brought home to the party against whom the prescription is sought to be legally interrupted, would not be sufficient to operate as a legal interruption in the true sense of the law." (Emphasis added by the Supreme Court.)
 
 
 21
 The effect of the plaintiff's failure to bring the insurer before a court barred the plaintiff from asserting his claim, even though based on the same cause of action; correspondingly, the service of the original complaint upon the insurer, the named defendant in the case before us had the effect of interrupting prescription. In Andrepont v. Ochsner, La. App.1955, 84 So.2d 63, which the Supreme Court of Louisiana distinguished but approved in Martin v. Mud Supply Co., the Court of Appeal held that the plaintiff's filing of a suit against a defendant sued "in any legal capacity" interrupts prescription of the plaintiff's claim. In that case the cause of action arose from an injury suffered by a patient during the course of an operation. The court held that the institution of a suit against Dr. Alton Ochsner interrupted the prescriptive period with regard to the Alton Ochsner Medical Foundation and its public liability insurer. That Dr. Ochsner was president of the Foundation was enough to indicate that the Foundation and its insurer had been apprised of the suit in a legal manner.
 
 The Court of Appeal was careful to say:
 
 22
 "Thus it appears that all of the cases seem to be based on the theory that the knowledge of the demand, or its origin, and basis, are imparted to the defendant even though the original suit was brought against the wrong defendant or against the defendant in an improper capacity, and even when brought by an improper plaintiff. So long as the proper person has been apprised of the demand in any legal capacity, prescription is interrupted." (Emphasis added.) 84 So.2d at 68.
 
 
 23
 Turning to the case before us, we find that the only difference between the original and amended complaints is the inclusion of the allegation that Travelers was the insurer of the Ethyl management and employees as well as the Ethyl Corporation. Even if this change is seen as more than a clarification of the original complaint, it can be interpreted only as a change in theory of recovery. The transaction or occurrence that gave rise to the demand for payment remains unchanged. There is no basis for treating Travelers as the insurer of one party as a different legal entity from Travelers as the insurer of that party's employees. While the original complaint may not have been sufficient to support a recovery, it was adequate to interrupt prescription with regard to the defendants named. See also, Lunkin v. Triangle Farms, 1945, 208 La. 538, 23 So.2d 209; Jackson v. American Employers' Ins. Co., 1942, 202 La. 23, 11 So.2d 225.
 
 III.
 
 24
 The defendant contends that the undisputed facts show that Brown and Scott were "borrowed employees" of Ethyl Corporation under the complete control of Ethyl Corporation and doing the work of Ethyl Corporation. Accordingly, their exclusive remedy against Ethyl Corporation is for workmen's compensation. Dixon v. Herrin Transportation Co., La. App., 2 Cir. 1955, 81 So.2d 159; Spanja v. Thibodaux Boiler Works, La.App. 1941, 2 So.2d 668. Cf. Touchet v. Travelers Indemnity Co., D.C.1963, 221 F. Supp. 376, and St. Claire v. Minnesota Harbor Service, Inc., D.C.1962, 211 F. Supp. 521. Alternatively, they argue that affidavits in support of defendant's motion for summary judgment and the evidence introduced at the trial of this case establish that maintenance brickwork is an essential part of the business of the Ethyl Corporation in manufacturing chlorine.
 
 
 25
 The district court's summary judgment dismissing the plaintiffs' claim against Ethyl and its insurer, is based on its agreement with that contention. The plaintiffs argue that this question should have been decided by a jury.
 
 
 26
 The plaintiffs did not ask for a jury trial until three years after they had filed their complaint. They explain that the defendants admitted in their answer that Brown and Scott were employees of George A. Caldwell and that the motion for a summary judgment was a change of position that was not disclosed until after the case was fixed for a pre-trial conference. The plaintiffs argue that their request for a jury trial was made within ten days from the Travelers change of position.
 
 
 27
 As we read paragraph 8 in each of the answers, the defendant admitted that Brown and Scott were employees of Caldwell and laid a foundation for its use of the borrowed servant doctrine. This paragraph reads:
 
 
 28
 "Answering paragraph 8 of the complaint, defendant admits that on or about May 7, 1959, the sid (sic) Ambrose Floyd Brown was employed as a brickmason [Scott as a brickmason's helper] by George A. Caldwell, and at the time of said accident was rendering services as a maintenance brickmason in performing maintenance and repair work incidental to and in the ordinary course and scope of the trade, business and occupation of defendant's named insured, Ethyl Corporation, but defendant denies all the remaining allegations of said paragraph."
 
 
 29
 The district court did not err in refusing a jury trial.
 
 
 30
 The district court's determination that the plaintiffs were statutory employees of Ethyl for purposes of the Louisiana Workmen's Compensation Law was not clearly erroneous. The judgment dismissing the claim against Ethyl and against Travelers as Ethyl's insurer must be affirmed. But the factors that determine whether a person is such a statutory employee do not necessarily determine whether, in the circumstances of this case, Brown and Scott were employees of Ethyl for purposes of the insurance policy Ethyl and its employees carried.
 
 IV.
 
 31
 Travelers contends that the plaintiffs' claims against it are barred by the "cross-employee" exclusion embodied in its policy. Paragraph I of the Insuring Agreement obligates Travelers:
 
 
 32
 "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."
 
 
 33
 Paragraph III defines the word "insured". Originally it included "the named insured [the Ethyl Corporation] and also * * * any executive officer, director or stockholder thereof while acting within the scope of his duties as such. * * *" January 1, 1959, Paragraph III was amended to read in part as follows:
 
 
 34
 "(1) Insuring Agreement III definition of insured is hereby amended to also include employees of the named insured while acting within the scope of their duties as employees.
 
 
 35
 "(2) The insurance afforded under this endorsement to such employees does not apply:
 
 
 36
 (A) under coverage A to any employee with respect to injury to or sickness, disease or death of another employee of the named insured in the course of such employment. * * *"
 
 
 37
 Under the provisions of LSA-R.S. 23:1032 and LSA-R.S. 23:1061, the only cause of action that plaintiffs could assert against the Ethyl Corporation would be under the Workmen's Compensation Law. The suit against Travelers cannot be grounded on the misconduct or negligence of Ethyl. It may be based however on the negligence of the Ethyl management or employees. Under Louisiana law an employee, even a member of the upper echelons of management, is a third party and suit against such a party is not barred by the exclusiveness of the remedy against the employer under workmen's compensation. See LSA-R.S. 23:1101; Adams v. Fidelity and Casualty Company of New York, La.App. 1958, 107 So.2d 496; Vidrine v. Soileau, La.App.1948, 38 So.2d 77; Kimbro v. Holladay, La.App.1934, 154 So. 369; Malone, Louisiana Workmen's Compensation Law and Practice §§ 365-366.
 
 
 38
 If the liability of the insurer seems to depend on which side of the table the plaintiffs go around, it is because of the willingness of the insurer to insure the acts of the named insured's employees. In the present case, however, liability is possible only if the scope of the word "employee" in the cross-employee exclusion is narrower than the statutory definition of employee included in the Workmen's Compensation Law. We turn now to the definition of "employee", as used in the Insuring Agreement.
 
 
 39
 We have no Louisiana jurisprudence to guide our footsteps. It would seem reasonable however that the prevailing interpretation of "employee" in employee exclusion clauses in insurance contracts should follow the standards governing the master-servant, independent contractor, or borrowed servant relationship. See Lumber Mutual Cas. Ins. Co. v. Stukes, 4 Cir. 1947, 164 F.2d 571; Annotation; 50 A.L.R.2d 85, § 3 [b], 7 Am.Jur.2d 454, § 132. There is nothing to indicate that any special meaning of "employee" is suggested by the insurance contract or by the body of law governing interpretation of such contracts.
 
 
 40
 We note one change in emphasis. "Employee", in terms of agency, is usually used in describing an employer's obligation to the public for tort liability. For such a purpose, the objective facts of the relationship are and should be controlling. Even though the insurance contract deals ultimately with liability to the public, we must treat it at all times as a contract between the parties. As a result, the intentions of the parties become paramount. Although these intentions are usually displayed or implied by the usual meaning of the words that are used, sometimes there are special, otherwise irrelevant facts that indicate the intentions of the parties. In the present context, if there were some indication of whom the contracting parties intended to be employees for the purposes of the contract this fact would be crucial.
 
 
 41
 Travelers points to one jurisdiction, Missouri, where the employee exclusion clause has been held to embody the Workmen's Compensation statutory definition of "employee". See Ward v. Curry, S.Ct.Mo.1960, 341 S.W.2d 830. Aside from the virtue that such a definition eliminates the possibility of holding liable the insurer through the employees of the named insured when it could not be held liable through the named insured, this decision has nothing to recommend it. LSA-R.S. 23:1061, which extends the coverage of workmen's compensation to all workers doing the ordinary business of the statutory employer, was specially written to eliminate the possibility of an employer's attempting to avoid compensation responsibility by interposing a so-called independent contractor between himself and his employee. That even the Workmen's Compensation Law does not countenance this section as establishing a definitive definition of employee is indicated by the inconsistent definition of "independent contractor" that is included in LSA-R.S. 23:1021 (6).[5] See Hughes v. Deckard, 5 Cir. 1959, 267 F.2d 697. There is absolutely no indication that the specialized definition of LSA-R.S. 23:1021 was meant to control in the insurance agreement and we see nothing to suggest that the Louisiana courts would follow those of Missouri.
 
 
 42
 Turning to the facts of the employment, we find that the plaintiffs were part of a work force supplied to Ethyl by George Caldwell for ordinary brickwork maintenance. Although these men spent all of their time working at the Ethyl plant, they were under the direct supervision of another Caldwell employee and were on the Caldwell payroll. While Ethyl officials determined where brickwork maintenance was needed and Ethyl furnished the material and equipment for such work, no Ethyl employee could tell Brown or Scott how his job was to be done nor did Ethyl have any control over the hiring and firing of Caldwell employees. All Ethyl supervision was channeled through the Caldwell foreman. Once a task was established, the Caldwell foreman had complete control over choosing workers and these workers were paid by the hour by Caldwell on the basis of work timesheets prepared by the Caldwell foreman and forwarded to the Caldwell offices.
 
 
 43
 While the work performed by Brown and Scott must be considered as an integral part of Ethyl's business, these workers were certainly not treated as an integral part of the Ethyl work force. They belonged to different unions from those that represented the Ethyl employees and they were not eligible for the retirement and other fringe benefits offered to Ethyl employees.
 
 
 44
 Finally, it appears clear that Ethyl did not consider the Caldwell workers as its employees. In its contract with Caldwell the workers were referred to as employees of Caldwell. In the context of interpreting the Travelers insurance contract, it is of crucial importance that Ethyl paid premiums on the liability insurance covering its employees. The amount of the insurance coverage depended on the number of Ethyl's employees. The Caldwell employees were not included in this number.
 
 
 45
 In the light of these facts, it seems clear that Brown and Scott were not "employees" of Ethyl, within the meaning of the insurance contract and as that term is defined by Louisiana law. See Benoit v. Hunt Tool Co., 1951, 219 La. 380, 53 So.2d 137; Hughes v. Deckard, supra. See also Johnson v. Royal Indemnity Co., 5 Cir. 1953, 206 F.2d 561; B & G Crane Service v. Thomas W. Hooley & Sons, 1955, 227 La. 677, 80 So.2d 369; Amyx v. Henry & Hall, 1955, 227 La. 364, 79 So.2d 483; Crutti v. Frank, La. App.1962, 146 So.2d 474; Cedillo v. Standard Oil Co. of Texas, 5 Cir. 1961, 291 F.2d 246; Restatement (Second), Agency § 227 (1958). Furthermore, it appears to us that Ethyl and Travelers did not intend to include the Caldwell employees when the word "employees" was used in their Insuring Agreement. See Pullen v. Employers' Liability Assurance Corp., 1956, 230 La. 867, 89 So.2d 373; cf. Arceneaux v. London Guarantee & Accident Co., La.App.1956, 87 So.2d 343. We conclude, therefore, that the district court correctly denied Travelers' motion for summary judgment.
 
 V.
 
 46
 The remaining contention is that the district court's findings of fact were unclear and unsupported by the evidence.
 
 
 47
 It is undisputed that the escape of the deadly chlorine gas was made possible by the malfunctioning of a compressor pump (a so-called Nash pump) which, in series with two other Nash pumps, ordinarily acted to pull chlorine through the purification system. The Nash pump in question had broken down in the past but it was not discovered until after the accident that a faulty trip relay switch was responsible for the malfunctioning.
 
 
 48
 When the Nash pump stopped working, chlorine gas was backed up into the compressor. To remedy such a situation, a pressure release mechanism, called an "acid trap" was designed to operate when pressure built up in the system and to dispel the chlorine gas harmlessly into the atmosphere. The acid trap had worked before on various occasions but on the day of the accident a fluid of unknown origin had been introduced into the trap and it did not function. The pressure in the compressor system built up until it blew off a metal blank in the chlorine gas lines which was clamped on and sealed with pitch. The chlorine escaped from the resulting hole.
 
 
 49
 In that we are concerned with the negligence of the Ethyl employees rather than that of the Ethyl Corporation itself, it is not relevant to inquire into the duty owed by the owner of the premises to Brown and Scott who were "invitees". The Ethyl employees owed only the duty of reasonable conduct raised to a higher degree by the dangerous substances and instrumentalities with which they were working. Holland v. St. Paul Mercury Ins. Co., La.App.1961, 135 So.2d 145; Normand v. Normand, La.App.1953, 65 So.2d 914; Litton v. Travelers Ins. Co., D.C.W.D.La.1950, 88 F.Supp. 76.
 
 
 50
 The district court found that the Ethyl employees were negligent in the following particulars: (1) in failing to perform periodic electrical load checks on the Nash pump and in failing to discover the faulty trip relay, (2) in failing to provide adequate clamps and sealing for the blank in the chlorine gas line, (3) in faulty design of the acid trap and in failing to check and remove waste materials clogging the trap, (4) in failing to equip the Nash pump with a check valve that would have prevented a flowback of chlorine into the idled pump, and (5) in failing to supply plaintiffs with adequate gas masks. All of these conclusions are warranted by the evidence and all correspond with the high degree of care owed by the Ethyl employees.[6]
 
 
 51
 Contrary to defendant's contentions, this is most certainly not a res ipsa loquitur situation where the only evidence of the negligence is the accident itself and the burden of producing evidence is thrown upon the defendant or defendants who are shown to have had control of the injuring instrumentality. Here the specific acts of negligence are carefully spelled out. In that the defendant insurer represents the whole body of Ethyl employees and management, it is unnecessary to allocate the fault in the case more specifically.
 
 
 52
 Travelers' final argument is that the district court was forced by the testimony to find that John Scott was guilty of contributory negligence in his conduct after the gas had escaped. Rather than remaining at the top of the tower to assist Brown's exit, Scott ran coughing from the building in search of aid. Two of Ethyl's employees entered the building and, with Brown's own assistance, helped him from the tower. The district court found that Scott's actions, although they may have been unwise, were not unreasonable or negligent in view of the extreme situation.
 
 
 53
 These are two separate suits that have been joined for a single trial and appeal. Mrs. Brown's claim resting on the injuries to her deceased husband cannot be barred from recovery by the negligent acts of John Scott. If indeed Scott had been negligent, this fact might establish a cause of action by Mrs. Brown against him, but we are unwilling to hold that any negligence by Scott constituted an intervening cause breaking the chain of causation established by the negligent acts of the Ethyl employees. As for Scott, his fleeing the building without making a rescue attempt must have minimized his injuries. Thus, we are forced to conclude that even if Scott had been negligent in failing to attempt a rescue, such negligence could bar neither claim that is here asserted.
 
 
 54
 The judgments are affirmed.
 
 
 
 Notes:
 
 
 [1]
 "§ 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
 "The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.
 "Nothing in this Chapter shall affect the liability of the employer to a fine or penalty under any other statute."
 
 
 [2]
 "§ 1061. Principal contractors; liability
 "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contract of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed."
 
 
 [3]
 "§ 1101. Employee and employer suits against third persons causing injury; effect on right to compensation
 "When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer the legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or the award of compensation hereunder shall not affect the claim of right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.
 "Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent."
 
 
 [4]
 If the automobile had been in use in the scope of Mud Supply's business, Mud Supply and its insurer would have been liable in solido. Under these circumstances the prescription with regard to the insurer would have been interrupted because LSA-C.C. art. 2097 provides that: "A suit brought against one of the debtors in solido interrupts prescription with regard to all."
 
 
 [5]
 § 23:1021(6):
 "`Independent Contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter."
 
 
 [6]
 Travelers strongly objects to the introduction of a letter outlining the corrective measures taken or proposed to be taken after the accident. It doubtlessly overlooks the second time that plaintiffs attempted to introduce this letter when the letter was admitted without objection