**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a corporation, Plaintiff-Appellee,**

v.

**Mitzi WYPIOR and Herbert Liebert, Defendants-Appellants.**

No. 15262.

United States Court of Appeals Seventh Circuit.

Aug. 11, 1966.

Frederick J. Bertram, Ronald S. Fishman, Chicago, Ill., Fishman & Fishman, Chicago, Ill., for defendant-appellant, Herbert Liebert.

Joseph B. Lederleitner, Chicago, Ill., Pretzel, Stouffer, Nolan & Rooney, Chicago, Ill., for plaintiff-appellee.

Before CASTLE and SWYGERT, Circuit Judges, and GRANT, District Judge.

SWYGERT, Circuit Judge.

The defendants, Mitzi Wypior and Herbert Liebert, appeal from a judgment of the district court entered upon a jury verdict for the plaintiff, American Casualty Company of Reading, Pennsylvania, in a declaratory judgment action.[1] The plaintiff brought the action seeking a declaration that an employee exclusion clause in a liability insurance policy issued to Wypior excluded coverage and responsibility for the defense of a state court suit with reference to a claim for injuries sustained by Liebert on the premises of the insured.

The defendant Wypior purchased an "Owners', Landlords', & Tenants'" liability policy from the plaintiff in 1962, covering an apartment building which she owned at 2528 North California Avenue in Chicago. The policy insured against damages for injuries resulting from specified hazards in and around the premises which the insured might become liable to pay. The policy excluded from coverage, however, injuries to "any employee of the insured arising out of and in the course of his employment by the insured."

The complaint filed by the insurance company in the declaratory judgment action alleged that Liebert claims to have suffered injuries in a fall from a ladder on the insured premises on December 5, 1963 and has brought a suit in the Circuit Court of Cook County against Wypior to recover damages therefor. It alleged further that Liebert's injury occurred during the course of certain repair work he was engaged to perform on the premises by Wypior. The complaint then recited the employee exclusion clause of the insurance policy and prayed for a declaration that the plaintiff was not liable to pay any judgment which might be rendered in favor of Liebert against Wypior for Liebert's injuries and not liable to defend Wypior in the state court action.

The evidence introduced at the trial showed that Liebert was once the owner of the building at 2528 North California Avenue. He later sold the building to Wypior, became a tenant of hers, and operated a grocery store on the first floor. Liebert experienced marital difficulties, however, and subsequently left for a two-year visit to Germany, returning to Chicago early in 1963, apparently in straitened financial circumstances and without a place to live. Wypior permitted him to occupy a storeroom, furnished only with a couch, in the basement of the apartment building. Liebert lived there from April 1963 to and including December 5, 1963 without paying any rent.

During this period, the evidence showed, Liebert performed the following services in connection with the building. At Wypior's request he turned on a thermostat on one occasion; he painted a hallway, also at her request; he installed two windows in the store portion of the building, without request; he assisted another man for a week or two in rebuilding the back porch; he knocked out some brickwork for air conditioners; he put in some type of cyclone fence; and, he did some work in the remodeling of the store into a beauty parlor. Liebert received no money for any of the services performed.

Liebert did not testify at the trial. Portions of his deposition taken in connection with the state court suit were read to the jury and a signed statement taken by an insurance investigator was introduced. This evidence tended to show that Liebert considered the various services he rendered to Wypior as being in exchange for his occupancy of the basement, an unwritten understanding of some sort. Wypior's testimony depicted her relationship with Liebert as being one of mutual informal accommodation between friends.

On December 5, 1963, Wypior requested Liebert to clean some shelves in the store. It was while performing this service that Liebert allegedly fell from a stepladder sustaining the injuries which

---

1. The plaintiff is a Pennsylvania corporation and the defendants are citizens of Germany and not citizens of any state.

prompted the state court action. Liebert's complaint in that suit alleged that Wypior retained him to do the work during which he was injured.[2]

■ Based upon the foregoing evidence, the jury returned a verdict for the plaintiff, in effect concluding that Liebert was an "employee" of Wypior at the time of his injury. The defendants appealed, and have presented many assertions of error for our consideration. We have concluded that one of these alleged errors, improper instructions to the jury on the question of employment, requires a reversal of the judgment of the district court and the granting of a new trial.

In his charge to the jury, the district judge first instructed the jurors that the existence of the employer-employee relationship between Wypior and Liebert on December 5, 1963 was a question of fact to be determined by them from the evidence, and that if they found Liebert to be Wypior's employee on that date their verdict should be for the plaintiff. The judge then gave the following instructions challenged by the defendants:

> I tell you, ladies and gentlemen of the jury, that an employee is any person who works or performs personal service for another with the latter's knowledge and consent, with or without payment in money. One volunteering service without any agreement for or expectation of a reward may be an employee of the one accepting such services.

These two sentences constituted the bulk of the court's instructions relating to the meaning of "employee" as contained in the exclusion clause in the contract of insurance. We think that they were erroneous statements of the law to be applied in this case, that they were abstract propositions depicting rare examples of the employment relationship not contemplated by the parties to the insurance contract and amounting to an invitation to the jury to resolve the critical issue in the plaintiff's favor. As such, the instructions were not cured by the later instruction, the only other one given dealing with employment, that:

> The test for determining whether or not a master-servant relationship exists is the right to control the servant which includes the power of discharge, the right to hire and discharge the servant.

■ The word "employee" appears in the law in many different contexts and thus does not lend itself to any inflexible definition. The definitions of an "employee" for purposes of workmen's compensation statutes and collective bargaining agreements, for example, do not determine the meaning of "employee" as used in a policy of insurance. When the word "employee" appears in a contract of insurance and is not defined in the policy, it must be construed in a manner most likely to correspond to the intention of the parties to the contract. General Acc. Fire and Life Assur. Corp. v. Brown, 35 Ill.App.2d 43, 181 N.E.2d 191, 195 (1962). The intention fairly attributable to the insurer and the insured, from an objective standpoint and in the absence of a contrary indication, should therefore reflect the ordinary meaning of the word as it is understood by persons generally and should highlight the characteristics which the law most often attributes to employment.[3]

2. The complaint contained one count alleging violations of the Illinois Scaffold Act, ILL.REV.STAT., ch. 48, §§ 60–69, and one count alleging ordinary negligence.

3. The Fifth Circuit adopted this reasoning in Travelers Ins. Co. v. Brown, 338 F.2d 229 (5th Cir. 1964). The court there noted that it is reasonable to assume that the word "employee" in employee exclusion clauses should follow general master-servant standards, but with a change in emphasis. It then said:
> Even though the insurance contract deals ultimately with liability to the public, we must treat it at all times as a contract between the parties. As a result, the intentions of the parties become paramount. Although these intentions are usually displayed or implied by the usual meaning of the words that are used, sometimes there are special, otherwise irrelevant facts that indicate

The normal indicia of the employer-employee relationship, as pronounced by the courts of Illinois, are contract, control, and compensation. King v. Grimm, 300 F.2d 658 (7th Cir. 1962); Gundich v. Emerson-Comstock Co., 21 Ill.2d 117, 171 N.E.2d 60 (1960); Kijowski v. Times Pub. Corp., 372 Ill. 311, 23 N.E.2d 703 (1939); Marion Water Co. v. Industrial Comm'n, 368 Ill. 350, 14 N.E.2d 236 (1938). The contract or agreement of employment may be express or implied, the control possessed by the employer as to the manner of the work performed need not be actually exercised, and compensation need not be in the form of money. If a jury is to properly assess the question of employment, it should be instructed on these regular incidents of employment and all the features of the employer-employee relationship should be considered together in determining whether, under the facts, a person is an "employee" within the meaning of that term in an insurance policy. The broader the definition of employment put before the jury, the less likely is the verdict to correspond to what was intended by the parties to the insurance contract.

The court in its instructions in this case gave little recognition to the general characteristics of employment. It rejected several instructions tendered by the defendants in which these elements were contained. Secondly, the instructions given were themselves inaccurate and confusing, even under the most liberal definitions of employment. The jury was told that an employee is "any person" who works for another with the latter's consent "with or without payment in money." [4] This definition would include relatives or friends who perform purely gratuitous service at their own direction as an accommodation. Such service is not employment. The instruction was particularly objectionable in the circumstances of this case where the critical questions concern the nature of the understanding, if any, between Liebert and Wypior as to the services performed and the character of these services as gratuities or compensation. The jury was further instructed that one volunteering service "without any agreement for or expectation of a reward" may be an employee. It is true that the instruction was merely permissive. But it was given without any recognition that employment is essentially contractual and without any explanation of the circumstances under which a volunteer might be considered an employee. In this respect it could only have been confusing and misleading to the jury.

The parties in this appeal have cited no Illinois decisions construing the word "employee" when found in an insurance policy. The Illinois cases cited by the plaintiff, in fact, are singularly unrelated to any construction of the term. The courts in several other states, however, have considered employee exclusion clauses. In the majority of the recent decisions they have held that the word "employee" used in an exclusion clause denotes regular employment, as distinguished from occasional, incidental, or casual employment.[5] Hudson v. Allstate

the intentions of the parties. In the present context, if there were some indication of whom the contracting parties intended to be employees for the purposes of the contract this fact would be crucial. Id. at 237.

4. The instruction appears to have been taken from language used in Ryan v. Unsworth, 52 R.I. 86, 157 A. 869 (1931).

5. In State Farm Mut. Auto. Ins. Co. v. Brooks, 136 F.2d 807 (8th Cir.), cert. denied, 320 U.S. 768, 64 S.Ct. 80, 88 L. Ed. 459 (1943), the Eighth Circuit, interpreting Missouri law, held that two boys who were temporarily employed for one dollar per day to pile wood were not merely "occasional, incidental, or casual employees" and were therefore excluded from coverage under a liability policy. In the course of its opinion, the court stated:

It is contended for the insurance company that the words "any employee", appearing in the exclusion clause of its policy, should be read broadly and literally to mean any and every person rendering service of any kind to the insured in his business, while the appellees would have the meaning re-

Ins. Co., 169 So.2d 598 (La.App.1964); Oberhansly v. Travelers Ins. Co., 5 Utah 2d 15, 295 P.2d 1093 (1956); Griffin v. Hardware Mut. Ins. Co., 93 Ga.App. 801, 92 S.E.2d 871 (1956); Bean v. Gibbens, 175 Kan. 639, 265 P.2d 1023 (1954). Contra, Spencer v. Travelers Ins. Co., 148 W.Va. 111, 133 S.E.2d 735 (1963); Pennsylvania Cas. Co. v. Elkins, 70 F. Supp. 155 (E.D. Ky. 1947). Further, all these cases indicate that the elements of contract, control, and compensation should be central to any jury instructions given on the question of employment. In Griffin v. Hardware Mut. Ins. Co., supra, for example, an insurance company sought a declaration that a man injured while assisting a service station mechanic in adjusting the timing of a customer's car at the mechanic's request was an "employee" within an exclusion clause in a liability policy covering the service station. The court held otherwise, stating:

> In the present case, since there was no contract of employment, if the relationship of master and servant existed, it would have to be inferred from the circumstances. * * * Paige merely asked Griffin to assist him in setting the timing of the automobile engine. Nothing was said of wages or compensation; nothing was said as to the duration of the assistance; nothing was said as to what Griffin was specifically to do, and it does not appear that Paige had the right to control the time, method, and manner in which Griffin was to lend his assistance. There is nothing from which it can be inferred that Griffin was the servant of Paige. 92 S.E.2d at 873.

Similarly, in Oberhansly v. Travelers Ins. Co., supra, a man was injured while returning an automobile to a consignor at his brother's request. He was held not to be an employee under an exclusion clause, even though engaged in his brother's business and even though his travel expenses were paid, because there was no agreement as to salary, the element of control over the service performed was not present, and because, in the court's language, "[t]he act was considered by all parties concerned to be a voluntary accommodation." 295 P.2d at 1095.

For these reasons we hold that the district court erred in its instructions to the jury on the question of employment. The judgment of the district court is reversed.

---

stricted to include only persons in continuous regular or permanent employment therein. We think the Missouri decisions have settled that the word "employee" as used in this policy clause is subject to interpretation by the courts to the extent that it is not to be deemed absolutely inclusive of any and every person who may happen, at the time of an accident, to be rendering some service to the insured in his business at his direction. Id. 136 F.2d at 810–811.