138 N.J. Super. 70 (1975)
350 A.2d 256
AMY PETRONZIO, AN INFANT BY HER GUARDIAN AD LITEM, FRANK PETRONZIO, AND FRANK PETRONZIO, INDIVIDUALLY, PLAINTIFFS,
v.
ITALO BRAYDA, DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT. LOUISA NOSENZO, DEFENDANT,
v.
LINDA PETRONZIO, THIRD PARTY DEFENDANT, AND SUSSEX COUNTY MUTUAL INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 12, 1975.
Decided December 8, 1975.
*73 Before Judges LYNCH, ACKERMAN and LARNER.
Mr. Samuel A. Gennet, attorney for third party defendant-appellant, Sussex County Mutual Insurance Company (Mr. David L. Ploshnick on the brief).
Busche, Clark & Leonard, attorneys for defendant third party plaintiff-respondent, Italo Brayda (Mr. R. Webb Leonard, of counsel and on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
On June 19, 1971 the infant plaintiff Amy Petronzio was on the premises of her grandmother Louisa Nosenzo. At the same time Italo Brayda (Brayda) was mowing the lawn of Mrs. Nosenzo. He operated a riding mower in reverse and it came in contact with plaintiff's foot, causing severe injuries.
The infant plaintiff and her father filed a complaint against Brayda, the operator of the mower, and Mrs. Nosenzo, its owner. Both defendants filed answers and crossclaims against each other for contribution and indemnification.
Pursuant to appropriate order defendant Brayda filed a third-party complaint seeking a declaratory judgment to construe the homeowners insurance policy issued by Sussex County Mutual Insurance Company (Sussex) to Nosenzo as the named insured so as to encompass coverage for Brayda as an additional assured. The main action was bifurcated *74 and stayed and the third-party action was tried before the court without a jury.
The clause in the Sussex homeowners policy upon which Brayda relied for coverage provides under the category of Definitions:
(a) Insured means * * *
3(b) With respect to any vehicle to which this insurance applies, any employee of an insured while engaged in the employment of the insured.
After a hearing which explored the facts underlying the relationship between Brayda and Nosenzo and the use of the mower, the judge held that the policy provision in question was ambiguous and that it should therefore be construed to afford rather than deny coverage. He relied on Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1 (1961), and other similar precedents.
Both parties concede on this appeal that the motorized mower involved in the accident was a vehicle covered by the policy. Their sole controversy centers upon the issue whether Brayda was an employee of Nosenzo within the meaning and intent of the foregoing policy provision.
In considering the propriety of the trial judge's ruling it is necessary to summarize the operative facts pertaining to the use of the mower by Brayda.
Brayda was the son-in-law of the assured, Nosenzo, and resided with his family next to the assured's premises. The assured had been a widow for a number of years. Out of a feeling of affection for his mother-in-law and in fulfillment of a promise he had made to his father-in-law before his death, Brayda regularly aided Mrs. Nosenzo with some of the household chores. Included in his activities was the regular care of the grounds involving mowing the lawn and trimming the shrubbery.
Mrs. Nosenzo owned the riding mower which was used by Brayda in mowing her lawn as well as his own. However, Brayda maintained this piece of equipment and provided the *75 fuel for its use. No compensation for his services was paid to or expected by Brayda; and Mrs. Nosenzo exercised no control or direction as to the time or method of his performance. On the day of the unfortunate accident the infant plaintiff was visiting with her parents.
Our review of the facts and applicable law convinces us that the trial judge fell into error in misapplying a rule of construction of insurance contracts to the policy provision involved herein. Insurance policies should, as he noted, be construed liberally in favor of the assured to provide coverage where there exists a discernible ambiguity in the language employed by the carrier. Mazzilli v. Acc. & Cas. Ins. Co., supra; Caruso v. John Hancock &c. Insurance Co., 136 N.J.L. 597 (E. & A. 1947). The major premise for the application of this rule, however, is the presence of the ambiguity. Steiker v. Philadelphia Nat. Ins. Co., 7 N.J. 159 (1951). In the absence of ambiguous language, the court has no right to disregard the plain terms of the policy and arbitrarily construe those terms in order to effectuate a liberal policy of preferential treatment to an assured in litigation against an insurance carrier. As expressed by the Supreme Court of Washington in Rew v. Beneficial Standard Life Ins. Co., 41 Wash.2d 577, 250 P. 2d 956, 959 (1952):
The rule that contracts of insurance will be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous and then construing it in favor of the insured.
We find that the key word "employee" is clear and unambiguous when considered in its ordinary, plain and popular meaning. The layman assured who purchases a policy would have little difficulty in ascribing to the term "employee" a certain well-known concept, namely, an individual who works for the assured for compensation and is subject to his direction and control.
*76 The various legal ramifications of the term as used in the law of master-servant or workmen's compensation may be of some analogous interest. But the keystone of construction of a term in a policy of insurance is and should be governed by the understanding of members of the general public who purchase the insurance. Edgewater Nat'l. Bank v. Safeguard Ins. Co., 81 N.J. Super. 383, 388 (App. Div. 1963). Although the present case involves coverage for an additional assured who was not a party to the policy contract, the same principles of construction should apply.
In Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 488 (1961), the Supreme Court articulated the principle that "[t]he court's goal in construing an accident insurance policy is to effectuate the reasonable expectations of the average member of the public who buys it." See also Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 525 (1963); Perrine v. Prudential Ins. Co. of America, 56 N.J. 120, 125 (1970).
We recognize that the doctrine of reasonable expectations of the average policyholder has been applied in order to expand coverage in favor of the assured rather than to limit it in favor of the carrier. Nevertheless, there is no reason apparent to us why this test of construction should be disregarded because the result thereof would benefit the carrier instead of the assured.
Certainly, in reading her policy or in being advised that her policy covers her household employees, neither Mrs. Nosenzo nor any other assured would ever perceive or anticipate that it covered a son-in-law who volunteered without pay and without a structured relationship to help out by mowing the lawn. The term "employee" has no hidden, subtle or esoteric meaning. It is a simple and direct word with a well-established significance in the understanding of the world of laymen  an understanding which does not encompass a relative who performs purely gratuitous service as an accommodation.
*77 The case of American Casualty Co. of Reading, Penn. v. Wypior, 365 F.2d 164 (7 Cir.1966), is pertinent. It involved a declaratory judgment suit to determine whether an employee exclusion clause in a liability policy negated coverage for an injury sustained by the claimant while he was doing some repair work for the assured. The nature of the relationship and the inferences therefrom were such as to create a fact question for jury determination whether the injured person was an employee. The trial judge in his instruction to the jury defined an employee in the following language:
I tell you, ladies and gentlemen of the jury, that an employee is any person who works or performs personal service for another with the latter's knowledge and consent, with or without payment in money. One volunteering service without any agreement for or expectation of a reward may be an employee of the one accepting such services. [365 F.2d at 166]
The United States Court of Appeals, Seventh Circuit, reversed a judgment for plaintiff on the ground that the foregoing instruction was erroneous. In addition to a review of cases holding that the word "employee" used in an exclusion clause denotes regular employment, the court stated:
* * * The jury was told that an employee is "any person" who works for another with the latter's consent "with or without payment in money." This definition would include relatives or friends who perform purely gratuitous service at their own direction as an accommodation. Such service is not employment. * * * [365 F.2d at 167]
In the context of the facts of this case the foregoing interpretation of the word "employee" from the vantage point of the reasonable expectation of the purchasing public happens to coincide with the meaning attributed to it in analogous areas of law. The problem of the existence of an employer-employee relationship vis-a-vis an independent contractor status has been explored repeatedly in connection with workmen's compensation and negligence litigation. *78 Varying tests have been applied, such as right of control as to method of performance[1] and the relative nature of the work test.[2]
The Restatement Agency, recommends a combination of factors in testing the existence of an employer-employee relationship:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job,
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business. [Restatement Agency 2d, § 220 at 485-486 (1958)]
See also, Geary v. Simon Dairy Products Co., 7 N.J. Super. 88 (App. Div. 1950); Tofani v. LoBiondo Brothers Motor Express, Inc., 83 N.J. Super. 480 (App. Div.), aff'd 43 N.J. 494 (1964).
In fact, in Cerniglia v. Passaic, 50 N.J. Super. 201 (App. Div. 1958), this court denied workmen's compensation benefits to a petitioner who was but a volunteer acting out of civic and charitable motives without payment or expectation *79 of payment for his services. We held that despite the liberal public policy inherent in the Workmen's Compensation Act to afford benefits to a worker, petitioner was not an employee entitled to such benefits.
Although the construction of the term "employee" in other areas of law is not necessarily controlling in the construction to be applied to a contract of adhesion such as an insurance policy, nevertheless these analogous precedents are helpful as corroborative indicia of the legal definition of the term. Thus, even if we saw fit to apply the legalistic construction of the word "employee" to the facts herein, the result would be the same. The application of any or all of the tests suggested by the foregoing authorities leads to the inevitable conclusion that Brayda was not an employee of his mother-in-law, Mrs. Nosenzo, and therefore not entitled to coverage under the policy.
It should also be observed that the household policy in question does not contain the standard omnibus clause of an automobile liability policy covering the operator of a vehicle as an additional assured. The coverage of Brayda under the Sussex policy must therefore stand or fall upon his status as an employee.
Brayda's counsel cites Winkelstein v. Solitaire, 129 N.J.L. 38 (Sup. Ct. 1942), aff'd 130 N.J.L. 158 (E. & A. 1943), in support of his position. The cited case is clearly inapposite for it simply imposed liability on the owner of a vehicle for the act of another on the theory of respondeat superior.
Lest there be some misunderstanding as to the particular issue involved in this litigation, some clarification may be appropriate. We do not determine herein that Mrs. Nosenzo may not be liable for the acts of Brayda on the theory of respondeat superior or that under such circumstances Sussex may not be obligated to defend its assured or to indemnify her for any judgment which may be entered. We simply hold that Brayda is not an additional assured under the Sussex policy and that Sussex is therefore not obligated to *80 defend him or indemnify him for any judgment which may be entered.
There is an additional feature to this case which requires examination. It is apparent from the record that the real party in interest in prosecuting the third-party complaint against Sussex is another insurance company covering Brayda as a named assured. This company was not named as a party to the litigation. Despite this, Sussex urged the trial court and on appeal that the declaratory judgment incorporate a determination of the respective rights and duties of the two carriers inter se.
Since Brayda's insurance carrier was not made a party and since the issues of primary or excess coverage were not framed in the pleadings, we agree with the trial judge that it was not an appropriate matter for determination in this litigation. A fortiori, it is not before us for resolution.
Reverse and remand for entry of judgment consistent with this opinion.
NOTES
[1] Giroud v. Strkyer Transportation Co., 104 N.J.L. 424 (E. & A. 1928); DeMonaco v. Renton, 18 N.J. 352 (1955); Galler v. Slurzberg, 31 N.J. Super. 314 (App. Div. 1954), aff'd 18 N.J. 466 (1955).
[2] Buchner v. Bergen Evening Record, 81 N.J. Super. 121 (App. Div. 1963).