156 Ariz. 257 (1987)
751 P.2d 573
ARIZONA PROPERTY AND CASUALTY INSURANCE GUARANTY FUND, Plaintiff/Appellant,
v.
Mary Jo DAILEY, individually and as surviving spouse of Charles L. Dailey, deceased, and as mother of Mariah Danielle Dailey, Charles L. Dailey, Jr. and Richard Dailey; Ruth Anderson, individually and as Personal Representative of the Estate of Johnnie C. Anderson, deceased, Defendants/Appellees.
No. 2 CA-CV 87-0190.
Court of Appeals of Arizona, Division 2, Department A.
November 27, 1987.
Review Denied March 30, 1988.
Lesher & Borodkin, P.C. by Marvin Borodkin, Tucson, for petitioner/appellant.
Chandler, Tullar, Udall & Redhair by S. John Trachta and E. Hardy Smith, Tucson, for defendants/appellees.
OPINION
HOWARD, Presiding Judge.
This is an appeal from the granting of a summary judgment in a declaratory judgment action. At issue is the construction of an aviation insurance policy. The trial court decided this case based on a statement of stipulated facts and the sworn statements of John and Mildred Vance. This evidence showed that John Vance owns Mobile Aire Hangars (Mobile Aire) which is in the business of developing, building and renting aircraft hangars. Johnnie C. Anderson was an FAA certified flight instructor qualified in multi-engine aircraft. He owned and operated Anderson Flying Service which was in the business of providing aviation charters, services and flight instruction. Anderson *258 had given lessons to employees of Mobile Aire in the past, including Charles Dailey, Jr. When giving the lessons, Anderson would use an aircraft owned by Mobile Aire or Vance. Anderson would fill the plane with gas at his pumps and, after the lessons, send a bill to Vance for the gas and the lessons.
On December 11, 1983, while Anderson was giving a lesson to Dailey in a Beech Baron multi-engine aircraft registered to Vance, the plane crashed and Anderson and Dailey were killed. The Ideal Mutual Insurance Company (Ideal) provided coverage on the Baron. On January 8, 1985, Mary Jo Dailey filed a complaint for wrongful death against Ruth Anderson, individually, and as personal representative of the Estate of Johnnie C. Anderson, deceased. Anderson made a claim for defense and liability coverage to Ideal. Since Ideal was in a New York state insolvency proceeding, the appellant, Arizona Property and Casualty Insurance Guaranty Fund (The Fund) became obligated, pursuant to A.R.S. § 20-664, as the insurer of the Baron in the place and stead of Ideal.
Ideal's policy contained the following definition of "insured":
"The unqualified word `Insured' wherever used in this Policy with respect to Coverage A, B, C and D, includes not only the Named Insured but also any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the permission of the Named Insured."

The provisions of this paragraph do not apply: (Emphasis supplied.)
* * * * * *
(b) to any person or organization or to any agent or employee thereof (other than any employee of the Named Insured while acting in the course of his employment by the Named Insured) engaged in ... the operating of [a] ... commercial flying service or flying school with respect to any occurrence arising out of such ... operations." (Emphasis added.)
The Fund filed this action, and both appellant and appellees subsequently filed motions for summary judgment. The Fund contended that Ideal provided no coverage for the accident because Johnnie Anderson was not an employee of Vance or Mobile Aire and thus was not an insured because the accident occurred while flying lessons were being given to Dailey. The appellees contended that the word "employee" was ambiguous and can be used in many senses and thus should be construed most strongly against the insurer.
The trial court granted summary judgment to the appellees, finding:
"[T]hat while the policy can be interpreted to exclude coverage for Anderson, and while it was most probably the intent of the insurance company to do so, the word employee, without further definition, is an ambiguous term, the common usage of which could include Mr. Anderson's activities in this case."
We do not agree with the trial court's conclusions and reverse.
"The construction of an insurance contract is a question of law for the court and the court should enforce the insurer's contract as made. The insurer should be required to pay damages only on claims intended to be insured against and to answer only for risks intended to be assumed. It is not the prerogative of the court to create ambiguities where none exist. [Citations omitted.]" National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Rick, 134 Ariz. 122, 128, 654 P.2d 56, 62 (1982). "In determining whether ambiguity exists in a policy, language should be examined from the viewpoint of one not trained in the law or the insurance business." Sparks v. Republic National Life Insurance Company, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982), cert. denied, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632. When the word "employee" appears in a contract of insurance and is not defined in the policy, it must be construed in the manner most likely to correspond to the intention of the parties to the contract. Eagle Star Insurance Company, Ltd. v. Deal, 474 F.2d 1216 (8th Cir.1973). The *259 intention fairly attributable to the insurer and the insured, from an objective stand-point and in the absence of a contrary indication should therefore reflect the ordinary meaning of the word as it is understood by persons generally and should highlight the characteristics which the law most often attributes to employment. "Undefined terms of an insurance policy, such as `employee,' must be construed in their plain, ordinary and everyday sense and the parameters of the definition should reflect the legal characteristics most frequently attributed to the word. [Citation omitted.]" Id. at 1220. We agree with the New Jersey court in the case of Petronzio v. Brayda, 138 N.J. Super. 70, 73, 350 A.2d 256, 259 (1975):
"We find that the key word `employee' is clear and unambiguous when considered in its ordinary, plain and popular meaning. The layman assured who purchases a policy would have little difficulty in ascribing to the term `employee' a certain well-known concept, namely, an individual who works for the assured for compensation and is subject to his direction and control."
There was no evidence in this case that Johnnie Anderson was other than an independent contractor.[1] He was not on the payroll of Vance or Mobile Aire, and there is no evidence that he was subject to Vance's direction and control in giving the flying lessons. Anderson maintained his own place of business and billed Vance for payment for the lessons.
This does not, however, solve all the issues in this case. In the trial court appellant also raised the doctrine of "reasonable expectations." See Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co., 140 Ariz. 383, 682 P.2d 388 (1984). The appellees contend that the insurance company led Vance to believe that the type of accident which occurred here was covered by the policy. In his deposition, Vance gave this account of his conversations concerning insurance coverage:
"Q  Did you tell your agent the purpose for which that plane was going to be used?
A  Yes.
Q  And so when you obtained insurance and liability insurance, it was your intent and belief that there would be liability for accidents occurring during instruction of a multi-engine student?
A  Yes.
* * * * * *
Q  Before you started taking instruction from Johnny Anderson in the Baron, did you discuss with him anything to do with insurance?
A  Yes.
Q  When was that? Before you started?
A  Yes. It was quite sometime before I started in the Baron. See, Johnny was the only instructor I had, have ever flown with, and I always used my own airplanes, and I have talked to him and his agent, Ed Bougher, out of Los Angeles, about insurance.
Q  You personally talked to Ed?
A  Yes.
Q  And what did Ed tell you?
A  The consensus of what they both told me was that any plane that Johnny Anderson was giving instruction in as Anderson Flying Service, the plane was covered under his policy as an instructional FBO operation.
Q  Did you talk to Ed about the instruction that Johnny was giving to you when you inquired about the coverages, as opposed to anybody else? That may be unclear.
When you talked to Ed about the insurance that would be afforded when Johnny was instructing, did you discuss it with him only in the light of the fact that you personally were going to be instructed?
A  No, I included Chuck and my other employees,
Q  And do you specifically recall asking Ed if there would be coverage for Johnny Anderson and the aircraft if you *260 or your employees or Chuck Dailey were being instructed?
A  Yes  you see, I have  I don't remember offhand. I would say five or six other employees other than Chuck have come out and taken instructions in my various airplanes with Johnny, and this has gone back several years, and I checked then with Ed Bougher with Johnny and took their word that any airplane he got in with employees were covered. I didn't get their name on a piece of paper or anything, but they both told me they were covered, if Johnny used my airplanes or the corporate airplanes or whatever, that they were automatically covered the minute he was giving instruction in them.
Q  To you or your employees is the way you understood it?
A  Yes.
Q  Did you discuss with your insurance agent the fact that your airplanes were being used for instruction?

A  I don't remember.

Q  You mean you believed that you had coverage for that use on your airplane?

A  Yes, yes." (Emphasis added.)
In order for Darner to apply, the appellees would have to show that the insurance company did something or said something which would reasonably lead Vance to believe that his insurance covered the plane when it was being used by a non-employee instructor to train him and his employees. While Vance may have harbored a belief that there was such coverage and intended such coverage, his deposition does not disclose any action on the part of the insurance company which would justify such a belief. He did not remember ever talking to his agent about the use of the aircraft for pilot training, but rather believed that coverage for himself and his employees was provided by Anderson's policy.
As further evidence of the intent of the parties to the insurance contract, the appellees point to an endorsement to the policy which sets out who must be piloting the airplane in order for there to be coverage. The endorsement names Jack Vance, his wife, Charles Dailey and any pilot, provided they, inter alia, have a multi-engine land rating in the same make and model of the aircraft insured by the policy.
Appellees argue that because the endorsement requires training in the same make and model, it was expected by the parties that the insured aircraft would be used for this training and that it would be done by a person FAA certified to give such training, to-wit: a person such as Anderson who is in the flying school business. We find this logic to be strained.
First of all, there was no evidence that Vance relied on the endorsement for his belief that there was coverage when the plane was being used for instructional purposes. Furthermore, it does not follow that because these persons were required to be rated in the same make and model, the insurance company contemplated that the plane would be used for instructional purposes by a flying school. Darner does not apply to this case.
Reversed and remanded with instructions to enter judgment in favor of the appellant.
LACAGNINA, C.J., and HATHAWAY, J., concur.
NOTES
[1] In fact, Vance denied that Anderson ever was his employee.