138 N.J. Super. 398 (1971)
351 A.2d 353
DOROTHY YARRINGTON, PLAINTIFF,
v.
NICHOLAS CAMAROTA ET AL., DEFENDANTS, AND BALDWIN MANOR, INC., NICHOLAS CAMAROTA AND BERTRAM ROBERTS, INDIVIDUALLY AND T/A BALDWIN MANOR, DEFENDANTS-THIRD-PARTY PLAINTIFFS AND APPELLANTS,
v.
MARYLAND CASUALTY COMPANY, ET AL., THIRD-PARTY-DEFENDANTS, AND MARYLAND CASUALTY COMPANY AND ASSURANCE COMPANY OF AMERICA, THIRD-PARTY DEFENDANTS AND RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1971.
Decided June 28, 1971.
*399 Before Judges KILKENNY, HALPERN and LANE.
Mr. Matthew M. Keshishian argued the cause for appellants (Messrs. Krugman, Chapnick, Grimshaw & Dubow, Attorneys; Mr. Keshishian on the brief).
Mr. Edward E. Kuebler argued the cause for respondents.
The opinion of the court was delivered by LANE, J.A.D.
Third-party plaintiffs Baldwin Manor, Inc., Nicholas Camarota and Bertram Roberts, individually and trading as Baldwin Manor, appeal from an order dated August 25, 1970 granting summary judgment to third-party defendants Maryland Casualty Company and Assurance Company of America and denying third-party plaintiffs' motion for summary judgment.
From at least August 1963 to May 2, 1966 Baldwin Manor, Inc. was the owner of premises upon which it constructed a seven-building garden apartment complex. On May 2, 1966 Baldwin Manor, Inc. conveyed the premises to its principals, Nicholas Camarota and Bertram Roberts, who on June 1, 1966 sold the premises to Michael Klebanoff and Jacob S. Rudd, t/a Elizabeth Gardens, Inc. On April 23, 1967 a fire occurred in one of the buildings as a result of which numerous lawsuits to recover for property damage were instituted in which Baldwin Manor, Inc., Nicholas Camarota and Bertram Roberts, *400 individually and t/a Baldwin Manor, were joined as defendants, as were the present owners. Generally speaking, the claims asserted against the third-party plaintiffs were that they were negligent in the construction of the building and as a result of their negligence the fire either started or was caused to spread, thereby causing damage to the various plaintiffs.
Assurance Company of America issued a special multi-peril policy to Baldwin Manor, Inc. for the policy period August 29, 1963 to August 29, 1966. By endorsement, dated May 2, 1966, the name of the insured was amended to Baldwin Manor, Nicholas Camarota and Bertram Roberts, partners, t/a Baldwin Manor.
By their third-party complaints the third-party plaintiffs in effect sought a declaratory judgment that Assurance Company of America was obligated under its policy to defend third-party plaintiffs against the claims made and to pay any judgments that might be obtained against them. Maryland Casualty Company was joined as a third-party defendant because in some way Assurance Company of America is affiliated with Maryland Casualty Company. In view of our disposition of the appeal we need not concern ourselves with the relationship between Assurance Company of America and Maryland Casualty Company.
The question is whether the policy affords coverage where damage occurs for the first time after the policy period as a result of acts committed by the insureds during the policy period. The trial judge held that there was no coverage.
Section II, Coverage C, provides that the insurance company will pay "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this Section applies." The company is also obligated under that coverage to defend any suit brought against the named insured alleging "such bodily injury or property damage and seeking damages which are payable under the terms of this Section." The face sheet *401 of the policy sets forth the limit of liability under Coverage C as $300,000 for each occurrence.
"Occurrence" is defined:
"occurrence" means an event, or a continuous or repeated exposure to conditions, which causes bodily injury or property damage during the policy period that is neither expected nor intended by the Insured. All such exposure to substantially the same general conditions existing at or emanating from each premises shall be deemed one occurrence.
The policy provides in Subsection J 2 of "Conditions Applicable to Section I and Section II":
Section II of this policy applies only to bodily injury or property damage occurring during the policy period if, the occurrence takes place within the United States of America, its territories or possessions or Canada.
In Muller Fuel Oil Co. v. Ins. Co. of No. Amer., 95 N.J. Super. 564 (App. Div. 1967), we stated:
We are aware of those cases interpreting the words "occurrence during the policy period," where there is a time interval between some negligent act and damage resulting therefrom. They are collected in the annotation in 57 A.L.R.2d 1385. As a general rule the time of the "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. "The time of the accrual of the insured's liability is the determining factor, not the time of an event which ultimately results in liability." Export S.S. Corp. v. American Ins. Co., 106 F.2d 9 (2 Cir.1939), affirmed on rehearing 108 F.2d 1013 (1940), certiorari denied, American S.S. Owners Mut. Protection & Indemnity Assn. v. Exchange S.S. Corp. & American Export Lines, 309 U.S. 686, 60 S.Ct. 809, 84 L.Ed. 1029 (1940). [at 578]
And further:
The tort of negligence is not committed unless and until some damage is done. Therefore, the important time factor, in determining insurance coverage where the basis of the claim is negligence, is the time when the damage has been suffered. [at 579]
*402 See also, Landerman v. United States Fid. & Guar. Co., 25 Conn. Super. 297, 203 A.2d 150 (Super. Ct. 1964); New England Gas & E. Ass'n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 116 N.E.2d 671, 681 (Sup. Jud. Ct. 1953); Peerless Ins. Co. v. Clough, 105 N.H. 76, 193 A.2d 444 (Sup. Ct. 1963).
Third-party plaintiffs seek to have us depart from the rule stated in Muller Fuel Oil Co. v. Ins. Co. of No. Amer., supra, which we decline to do. In support of their position they rely upon Kissel v. Aetna Cas. & Sur. Co., Mo. App., 380 S.W.2d 497 (St. Louis Ct. App. 1964). Their reliance on that case is misplaced. The facts in Kissel are clearly distinguishable because there the damage first occurred during the policy period. The holding was that where the damage occurs during the policy period but continues after the policy has expired, coverage is afforded for all of the damage resulting from the same process.
Third-party plaintiffs argue further that the general rule of liberal construction of insurance contracts should apply. It is clear that when construing insurance contracts we will hold in favor of coverage for an insured to the greatest extent that a fair interpretation of the contract will allow. Harr v. Allstate Ins. Co., 54 N.J. 287, 303-304 (1969); Kievit v. Loyal Protec. Life Ins. Co., 34 N.J. 475, 482 (1961); Mahon v. American Cas. Co. of Reading, 65 N.J. Super. 148, 165 (App. Div.), certif. den. 34 N.J. 472 (1961). That rule, however, only applies when there are difficulties of construction. "[C]lear basic terms and particular provisions of an insurance contract may not be disregarded at will and a new contract judicially made for the parties." Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 525 (1963).
Here the policy clearly affords coverage in accordance with its terms only where damage occurs during the policy period. It is admitted that in this case the damage occurred eight months after the policy period. There is no obligation on the part of Assurance Company of America under its policy *403 to defend third party plaintiffs on the claims made against them or to pay any judgment that may be rendered against them as a result of the fire of April 23, 1967. We are aware that liability has been asserted against the insurance companies on other grounds. Our ruling has no effect on such claims.
The order dated August 25, 1970 is affirmed.