154 N.J. Super. 49 (1977)
380 A.2d 1165
MIDDLE DEPARTMENT INSPECTION AGENCY, PLAINTIFF-APPELLANT,
v.
THE HOME INSURANCE COMPANY AND THE CALIFORNIA UNION INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
MIDDLE DEPARTMENT INSPECTION AGENCY, PLAINTIFF-APPELLANT,
v.
THE HOME INSURANCE COMPANY AND THE CALIFORNIA UNION INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1977.
Decided November 21, 1977.
*51 Before Judges HALPERN, LARNER and KING.
Mr. Arthur Schmauder argued the cause for appellant (Messrs. Shanley & Fisher, attorneys).
Mr. John Sheedy argued the cause for respondent The Home Insurance Company (Messrs. Morgan. Melhuish, Monaghan & Spielvogel, attorneys; Mr. Henry G. Morgan, of counsel; Mr. Michael O. Renda on the brief).
Mr. Michael J. Cernigliaro argued the cause for respondent The California Union Insurance Company (Messrs. Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys).
*52 The opinion of the court was delivered by LARNER, J.A.D.
Plaintiff Middle Department Inspection Agency (Middle Department) is the successor in interest of Middle Department Association of Fire Underwriters (Association). Both companies were engaged in the business of inspecting electrical installations to assure compliance with applicable laws and regulations. In July 1970 Association was insured under a liability policy issued by The Home Insurance Company (Home). It was at that time that Association, in the course of its business, inspected the electrical wiring of a building in Long Branch, New Jersey.
In May 1973 a fire occurred in that building causing property damage, which resulted in a lawsuit against Middle Department seeking damages on an allegation of negligent inspection. As of the time of this occurrence the Home policy was no longer in force. However, Middle Department did have at that time an Errors and Omissions policy with The California Union Insurance Company (California).
When plaintiff was served with the summons and complaint it forwarded them to Home, the liability carrier as of the time of the allegedly negligent inspection. Home disclaimed and declined to assume the defense or indemnification on the ground that its policy had expired as of the time of the fire.
Thereupon Middle Department forwarded the suit papers to California. By letter dated August 27, 1975 California observed that the inspection which triggered the cause of action in negligence took place before its policy went into effect. Nevertheless, it offered to investigate and undertake the defense upon a reservation of its rights to "deny coverage and defense" if further investigation disclosed noncoverage. This reservation of rights agreement was accepted by Middle Department through an appropriate signature on a copy of the letter.
On September 18, 1975 counsel for California moved to be relieved in the tort action because of the company's *53 decision to disclaim because of noncoverage, and an order was entered to that effect on October 17, 1975. As a result Middle Department instituted this declaratory judgment action against both companies seeking a declaration as to the obligation of either or both to defend and to indemnify it for any losses arising out of the litigation with the claimant.
All parties moved for summary judgment. The trial judge granted summary judgment in favor of Home and California and denied plaintiff's motion. In effect, therefore, the judge declared that neither policy provided coverage to plaintiff for the claim arising out of the fire of May 1973. Plaintiff appeals from the summary judgment and from the order denying its motion to set aside said judgment, asserting that (1) one or both of the policies obligate the respective companies to defend and pay, (2) California is estopped from disclaiming coverage, and (3) summary judgment for Home was unwarranted because it was based upon a specimen policy.
Points 2 and 3 relating to estoppel and reliance upon a specimen policy are clearly without merit. R. 2:11-3(e) (1) (E). We shall therefore limit the scope of this opinion to the substantive issue of coverage under each of the policies.

I
The Home policy provided general liability coverage for damage "caused by an occurrence." "Occurrence," in turn, is defined as "an accident * * * which results, during the policy period, in bodily injury or property damage." Thus, in order for an occurrence to qualify for coverage under this policy the damage must occur within the policy period.
Although the allegedly negligent act of Middle Department took place within the policy period, the fire and the damage both occurred after the policy expired. It is therefore manifest that the occurrence involved therein was not one within the ambit of the Home policy. See Yarrington *54 v. Camarota, 138 N.J. Super. 398 (App. Div. 1971), aff'd 60 N.J. 169 (1972); Muller Fuel Oil Co. v. Ins. Co. of North America, 95 N.J. Super. 564 (App. Div. 1967); Deodato v. Hartford Ins. Co., 143 N.J. Super. 396 (Law Div. 1976). The policy is clear and unambiguous and will not be rewritten to provide a better or different contract of insurance in order to afford coverage. Linden Motor Freight Co. v. Travelers Ins. Co., 40 N.J. 511, 525 (1963); Petronzio v. Brayda, 138 N.J. Super. 70, 75 (App. Div. 1975).
Plaintiff's reliance upon Jones v. Continental Casualty Co., 123 N.J. Super. 353 (Ch. Div. 1973), is wholly misplaced, as is its effort to apply the statute of limitations discovery rule of Lopez v. Swyer, 62 N.J. 267 (1973).
The trial judge correctly held that Home was not obligated to cover plaintiff for the occurrence herein.

II
California's policy is not a general liability policy written on an "occurrence" basis. It is rather an "errors and omissions" policy designed for those engaged in professional endeavors within the general scope of "architects and engineers." The policy applies to errors, omissions of negligent acts which occur on or after July 1, 1972, the effective date of the policy. In addition thereto, the company undertakes coverage for prior errors, omissions or negligent acts provided that the assured had in effect at that time an architect's or engineers professional liability policy.
Concededly the error, omission or negligent act of the assured took place two years before the inception of the California policy, and the policy in effect at the time of the allegedly erroneous inspection by the predecessor of Middle Department was that issued by Home. As we have already noted, the Home policy was a general liability policy premised on an occurrence and not on the error or omission involved in professional activity. In fact, the contractual liability *55 provision of the policy, upon which plaintiff relies, expressly provides:
This insurance does not apply:
(a) if the insured or his indemnitee is an architect, engineer or surveyor, to bodily injury or property damage arising out of professional services performed by such insured or indemnitee, including
(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and
(2) supervisory inspection or engineering services.
The foregoing provision and the tenor of other provisions of the Home policy demonstrate unequivocally that it is a comprehensive general liability policy and not a "professional liability policy" under the extended coverage contemplated by the California contract of insurance. "Professional liability policy" has been defined by Appleman in his text, Insurance Law and Practice:
Professional-liability policies are generally called * * * errors-and-omissions insurance where the risk is primarily to tangible property, such as coverage for attorneys, insurance agents, and architects.
An errors-and-omissions policy is professional-liability insurance providing a specialized and limited type of coverage as compared to comprehensive insurance; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the professions. [7A Appleman (Supp.) § 4504.3]
In our opinion there is no area of ambiguity in the California policy which would permit the court to apply the rule of liberal construction in favor of an assured or claimant. California did not undertake to cover any and all errors and omissions of its assured which occurred prior to the inception of the policy. The mere fact that one clause limits coverage to such errors and omissions occurring during the policy period while another simply extends coverage to pre-policy errors and omissions under particularized conditions does not lead to a latent ambiguity.
The condition of prior professional liability coverage is clear and understandable, particularly to those engaged in *56 the professional activity germane to such a particular policy. It provides more extensive coverage than that which would fulfill the reasonable expectations of an assured when he purchases a professional policy. The engineer or architect would not reasonably presume that an insurance carrier would cover his acts or deficiencies which took place before he purchased the policy unless there was an affirmative provision to that effect. And when that supplemental risk is undertaken by an insurer, as is the case herein, the unambiguous qualifying limitation as expressed in the policy is both reasonable and enforceable. It is distinguishable from a policy requirement of prior professional coverage with the same company which was struck down as against public policy in Jones v. Continental Casualty Co., supra.
We are satisfied that the summary judgment in favor of California was also warranted.

III
We are mindful of the apparent dilemma in which plaintiff finds itself in view of the holding that neither company covers the loss involved herein. Nevertheless, this is not a dilemma created by either insurance carrier. Each company issued the type of policy that was ordered and paid for. Neither can be held responsible for risks not included in the contractual undertaking. Middle Department or its predecessor could have protected itself for the eventuality herein by the purchase of appropriate coverage. Its uninsured status is thus attributable to its failure to do so, and not to any breach of contract by defendants.
We take note of the fact that counsel for appellant has filed a so-called reply brief to which he has annexed an affidavit and other documentary material which was not before the trial court and is improperly before us. Not only is such a presentation a gross violation of appellate practice and rules, but the contents thereof are of no consequence on the merits of this appeal.
Affirmed as to both appeals.