210 N.J. Super. 636 (1986)
510 A.2d 314
DEANNA BLAIR, AS GUARDIAN AD LITEM OF CINDY BLAIR AND LESLIE BLAIR, PLAINTIFFS,
v.
ANIK LIQUORS T/A BUY-RITE LIQUORS, DEFENDANT.
Superior Court of New Jersey, Law Division Passaic County.
Decided January 24, 1986.
*637 Gary R. Matano for plaintiffs (DeYoe, Heissenbuttel & Mattia, attorneys).
Robert L. Ritter for defendant (Cole, Schotz, Bernstein, Meisel & Forman, attorneys).
SAUNDERS, J.S.C.
This case presents a new question arising out of driving while intoxicated. Can a minor who was illegally sold alcoholic beverages by a liquor store recover the damages flowing from a motor vehicle conviction for driving while intoxicated (D.W.I.)? In other words, are statutorily imposed fines and sanctions, costs and other losses arising out of the conviction a proper element of damages recoverable against the store owner? This question is raised by defendant's Motion for Summary Judgment.
For purposes of this motion, it is conceded that the plaintiff, Cindy Blair, was 17 years old on July 19, 1984. On that date, she purchased two 6 packs of beer from the defendant, Anik Liquors. After consuming the beer, plaintiff drove her automobile to Cedar Grove where she was arrested and charged with D.W.I. in violation of N.J.S.A. 39:4-50. She was subsequently convicted in Municipal Court.
Cindy Blair and her father brought suit against the defendant alleging negligence by the store for selling the beer to a minor in violation of N.J.S.A. 33:1-77. Plaintiffs seek recovery for monetary damages resulting from the D.W.I. conviction, which include the following: fine and court costs, fees for reinstatement of driver's license, fees for an alcohol rehabilitation course and an insurance surcharge fee of $1,000 per year for three years. In addition, plaintiffs claim incidental damages *638 arising out of the suspension of Cindy Blair's driving privileges for six months, including transportation expenses, emotional distress and diminution in the quality of life.
This motion can be decided only after a consideration and resolution of two conflicting public policies. First, the prohibition of the sale of alcoholic beverages to minors and the imposition of civil liability and sanctions against those violating that prohibition. Second, the prohibition of D.W.I. and the imposition of sanctions against those violating that prohibition.

I
It is settled law that a tavern which sells alcoholic beverages to a minor or intoxicated person whose intoxication causes injury to himself or a third person may be liable for those injuries. Rappaport v. Nichols, 31 N.J. 188 (1959); Soronen v. Olde Milford Inn, Inc., 46 N.J. 582 (1966). The Supreme Court in Rappaport recognized that:
[W]hen alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this, is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent. [Id. at 202.]
The court went on to observe that:
[R]ecognition of the plaintiff's claim will afford a fairer measure of justice to innocent third parties whose injuries are brought about by the unlawful and negligent sale of alcoholic beverages to minors and intoxicated persons, will strengthen and give greater force to the enlightened statutory and regulatory precautions against such sales and their frightening consequences, and will not place any unjustifiable burdens upon defendants who can always discharge their civil responsibilities by the exercise of due care. [Id. at 205.]
It is equally well settled that the defense of contributory negligence of the bar's patron is not available to the tavern.
The public policy of the dram shop rule is to protect the intoxicated patron from his incapacity to protect himself or the public from foreseeable and unreasonable risk of harm ... The need to protect an intoxicated patron from foreseeable harm to himself and others is self-evident because he lacks the capacity `to exercise normal powers of judgment and prudence. He is a potential menace, not only to himself but to others' ... He `is a danger to himself and is in no *639 position to exercise self-protective care'. Buckley v. Pirolo Estate, 190 N.J. Super. 491, 498 (App.Div. 1983).
"The accountability may not be diluted by the fault of the patron for that would tend to nullify the very aid being afforded. Since the patron has become a danger to himself and is in no position to exercise self-protective care, it is right and proper that the law view the responsibility as that of the tavern keeper alone." Soronen v. Olde Milford Inn, Inc., supra, 46 N.J. at 592.
It is clear, then, that our courts recognize a "dram shop rule" based on principles of common law negligence. A liquor licensee may be civilly liable where injuries proximately result from the illegal sale of alcohol to a minor or intoxicated person. The rationale for imposing liability is based upon two concepts. It is a general rule that when the Legislature has by statute established a certain standard of conduct, one of the class for whose protection the statute was enacted obtains the benefit of the statute in an action for negligence if the breach was the efficient cause of the injury of which he complains. Faces, Inc. v. Kennedy, 185 N.J. Super. 113 (Law Div. 1981), aff'd 185 N.J. Super. 77 (App.Div. 1982); McCarthy v. Nat. Assoc. for Stock Car Auto Racing and Co., 87 N.J. Super. 442 (Law Div. 1965), aff'd 90 N.J. Super. 574 (App.Div. 1966), aff'd 48 N.J. 539 (1967); Moich v. Passaic Terminal and Transp. Co. 82 N.J. Super. 353 (App.Div. 1964). It is undisputed that the infant plaintiff is one of the class to be protected by the statute prohibiting the sale of liquor to minors. "The Legislature has in explicit terms prohibited sales to minors as a class because it recognizes their very special susceptibilities and the intensification of the otherwise inherent dangers when persons lacking in maturity and responsibility partake of alcoholic beverages; insofar as minors are concerned the sale of the first drink which does `its share of the work' ... and which generally leads to the others is unequivocally forbidden." Rappaport v. Nichols, supra, 31 N.J. at 201.
*640 Another basis for permitting civil liability is the heavy burden our courts place upon liquor licensees to prevent violation of alcoholic beverage control statutes and regulations. Our courts have long recognized that liquor licensees operate their businesses by way of a privilege and that if imposing liability under these circumstances will increase their diligence "the public interest will indeed be very well served". Rappaport v. Nichols, supra, 31 N.J. at 206. "Those who enter the licensed liquor business do so with full awareness that it is heavily fraught with dangers and that the members of the general public as well as the individual patron are entitled to receive and do receive high measures of protection from its abuses." Soronen v. Olde Milford Inn, Inc., supra, 46 N.J. at 592.
The soundness of the court's policy of placing this heavy burden on tavern keepers was re-examined and approved in Aliulis v. Tunnel Hill Corp., 114 N.J. Super. 205 (App.Div. 1971), and more recently in Faces, Inc. v. Kennedy, supra.

II
The operation of a motor vehicle while under the influence of intoxicating liquor or with a blood alcohol concentration of 0.10% or more is strictly forbidden. N.J.S.A. 39:4-50(a). The penalties for a first offense mandate a minimum fine of $250, a period of detainment of not less than 12 hours and a loss of driving privileges for a period of not less than six months. N.J.S.A. 39:4-50(a)(1). The offender must pay a fee of $40, successfully complete a program of highway safety and alcohol education, N.J.S.A. 39:4-50(b), and is assessed a per diem charge of $25 for attendance at the Intoxicated Driver Resource Center. N.J.S.A. 39:4-50(f). A surcharge of $100 is imposed on a violator to fund a "Drunk Driver Enforcement Fund". N.J.S.A. 39:4-50.8. There is an additional insurance surcharge of $3,000 payable at the rate of $1,000 per year. N.J.S.A. 17:29A-35(b)(2). In addition to the mandatory minimum fine, sanctions and surcharges, the court has the discretionary *641 right to impose a term of imprisonment of not more than 30 days and to increase the minimum fines within the guidelines set forth in the statute. N.J.S.A. 39:4-50(a)(1).
It is clear that New Jersey and other jurisdictions have "cracked down" on D.W.I. in recent years. New Jersey re-established the age of 21 as the legal age for purchasing and consuming alcoholic beverages as a response to the increase in teenage driving and drinking. Our sister state of New York and other states have recently joined this trend. A recently enacted statute provides that no driver or passenger shall consume an alcoholic beverage while the motor vehicle is being operated. N.J.S.A. 39:4-51a(a). The United States Congress has provided federal incentive grants to states with stringent drunk driving laws. This has encouraged states to adopt more comprehensive drinking and driving laws. See Assembly Judiciary, Law, Public Safety and Defense Committee Statement on New Jersey Senate Bill 1833 L 1983, c. 129.
There is an increased public awareness of the devastation that results from drinking and driving. This is reflected by the proliferation of organizations such as Mothers Against Drunk Drivers (M.A.D.D.), Students Against Driving Drunk (S.A.D.D.) and Remove Intoxicated Drivers (R.I.D.). Many municipalities have raised their court budgets so that court hours could be increased to dispose of the backlog of D.W.I. cases. In some instances, additional municipal court judges have been appointed for that sole purpose. The New Jersey Supreme Court, in addressing the issue, noted:
Drunk drivers have become an increasingly critical menace to society. Their actions have caused senseless damage, destruction, hardship and death. It is no wonder that the citizenry have been aroused by the continuing indifference of some to the health and welfare of the law-abiding person who is sensitive to the well-being of his fellow persons. Studies have shown that certainty as to what constitutes drunkenness and certainty and severity of punishment reduces the amount of drinking combined with driving. State v. Dively, 92 N.J. 573, 588-589 (1983); emphasis supplied.
The United States Congress, continuing in its awareness of the problem, amended the Federal Bankruptcy Code of 1984 to *642 preclude the discharge of a debt arising from the debtor's operation of a motor vehicle while intoxicated. 11 U.S.C.A. § 523(a)(9).

ARGUMENT
The plaintiffs' argue that the damages sought in this case are but a necessary extension of the law as expounded in Rappaport, Soronen and Faces, Inc. They argue that the defendant liquor store would be liable for personal injury damages sustained by the plaintiff if she had been involved in a motor vehicle accident; that it is just as foreseeable that she would be arrested and convicted of D.W.I. and, therefore, damages that flow from that arrest and conviction should also be compensable. Plaintiffs contend that the public policy of this state requires shifting of responsibility to the liquor dealer.
The defendant argues that the purpose of D.W.I. fines, sanctions and surcharges is to punish the offender thereby discouraging further violation. It argues that the policy would not be served if a drunk driver were permitted to be indemnified for those expenses and, in fact, be compensated for other incidental losses arising out of their imposition.
Justice Jacobs in Soronen v. Olde Milford Inn, Inc., supra, noted that "[W]e have no such [dram shop] act and must therefore deal with the common law principles of negligence and proximate causation. In molding and applying these principles we recognize here, as in Rappaport, that the balancing of the conflicting interests and the weighing of the policy considerations are the vital factors." Id. 46 N.J. at 592.
The law against driving while intoxicated has always been implemented to punish drunk drivers. Its purpose was not only to punish but to establish deterrent and preventative sanctions against those who disregard the safety or welfare of the traveling public. The intent of more recent amendments was not to reduce the importance of punishment for violators but rather to provide for treatment and rehabilitation in addition to *643 punishment. State v. Phillips, 154 N.J. Super. 112 (Law Div. 1977) aff'd 169 N.J. Super. 452 (App.Div. 1979).
The plaintiffs in this case are actually seeking recovery or indemnification of statutorily imposed punitive sanctions and monetary damages for incidental losses arising out of those penalties or other imposed treatment- or rehabilitation-type sanctions.
There is a general maxim of law that "No one shall be permitted to benefit from his own wrong." It is settled law that indemnity may not ordinarily be obtained by a party who has been at fault. Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548 (1980).
It is recognized in this state that public policy does not permit a wrongdoer to insure himself against his responsibility for an award of punitive damages. Allowing a wrongdoer to shift liability fails to punish the actor and deter him and others from committing the same conduct in the future, which is what punitive damages are supposed to do. Variety Farms, Inc. v. N.J. Mfrs. Ins. Co., 172 N.J. Super. 10 (App.Div. 1980). "A person who is able to insure himself against punishment `gains a freedom inconsistent with the establishing of sanctions against such misconduct'...." Variety Farm Inc. v. N.J. Mfrs., supra, 172 N.J. Super. at 25. "The policy considerations in a state where... punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong." Northwestern Nat'l Cas. Co. v. McNulty, 307 F.2d 432, 440 (5th Cir.1962).[1]
Plaintiffs contend that Faces, Inc. v. Kennedy, supra, suggests a disposition favorable to plaintiffs. In that case the *644 issue was whether a minor was responsible for damages sustained by a liquor establishment in lost profits resulting from a license suspension caused when the minor orally fraudulently misrepresented her age and purchased liquor. The minor's motion for summary judgment was granted on the narrow ground that the proximate cause of the suspension and resulting damages was the owner's failure to get the minor's written representation as to age. In its opinion, the court noted that to allow the owner to recover "such damages" (i.e. monetary losses flowing from a penalty and sanction imposed for a violation of state statute) would directly contravene the purpose and policy of the statute. The court refused to shift those losses. That determination is not helpful to plaintiff.

CONCLUSION
This court is faced with seemingly contradictory policies. On the one hand, we have a public policy prohibiting the sale of alcoholic beverages to minors and imposing civil liability in certain circumstances on the seller who violates that policy. This court recognizes the importance of allowing these civil actions permitting injured parties recovery for their injuries and thereby fostering the important policy objective. It is a liability that is derived from our law of negligence and one from which the loss can be protected by the purchase of insurance. See, generally, Rappaport v. Nichols, supra, and Soronen v. Olde Milford Inn, Inc., supra.
The wrongdoer (tavern or store owner) also faces other penalties and sanctions for violation of Alcoholic Beverage Control laws including fines, suspension of license privileges and even loss of license. This liability cannot be protected by insurance nor can there be any recovery or indemnification from a third party. See, generally, Variety Farms, Inc. v. N.J. Mfrs. Ins. Co., supra, and Faces, Inc. v. Kennedy, supra.
On the other hand, the State has a strong public policy prohibiting the operation of a motor vehicle by intoxicated *645 drivers (minors and adults) and imposes severe penalties and sanctions against those who violate this policy. This second policy stems from our societal concern to eliminate the drunken driver from our highways. As our Supreme Court has pointed out: "certainty and severity of punishment reduces the amount of drinking combined with driving." State v. Dively, supra, 92 N.J. at 588-589. The D.W.I. statute has punitive, deterrent and rehabilitative aspects. State v. Phillips, supra.
This court is satisfied that a proper balancing of the conflicting policies requires that drunken drivers suffer the full weight of the law. The full weight of the law should rest on them ultimately as well as nominally. Drunk drivers must be accountable for their conduct.
The dismissal of plaintiffs' complaint against defendant will effectively promote that policy. Any other decision would allow a drunken driver to effectively reduce or eliminate the penalties and sanctions imposed by law if he could recover his damages, direct and incidental, from a third party. It would depreciate the punitive, deterrent and rehabilitative purposes of our motor vehicle statute. This would be detrimental to the public policy of discouraging drinking and driving.
The dismissal of plaintiffs' complaint, on the other hand, will not be detrimental to the policy of preventing the sale of alcoholic beverages to minors or intoxicated adults. The tavern and store owner still has civil liability for any bodily injury sustained to his patrons or third persons. He still has to bear the penalties and sanctions (and incidental losses such as loss of income during suspension periods) imposed for his violation of Alcoholic Beverage Control Laws.
Since there is no dispute as to any material fact and defendant, Anik Liquors, is entitled to judgment as a matter of law, *646 the motion for summary judgment to dismiss the complaint will be granted.[2]
NOTES
[1] At her deposition, Cindy Blair admitted knowing before the date of the incident that it was illegal for her to purchase liquor, that it was against the law to drink and drive and that she would be punished if caught driving while intoxicated.
[2] As all claims are dismissed, this court makes no determination of the validity of plaintiff's cause of action for emotional distress. See Portee v. Jaffee, 84 N.J. 88 (1980).