TOWNSHIP OF GLOUCESTER, A Municipal Corporation of the State of New Jersey, Plaintiff,

v.

MARYLAND CASUALTY COMPANY; Farmer's Reliance Insurance Company of New Jersey; National Union Fire Insurance Company of Pittsburgh, Pa.; Insurance Company of North America; Nationwide Mutual Insurance Company; International Fidelity Insurance Company; United Bonding Insurance Company; Summit Insurance Company of New York; Anthony Amadei Sand & Gravel, Inc., a New Jersey Corporation; Anthony Amadei and Sidney Liss, individuals; Gloucester Environmental Management Services, Inc., a New Jersey Corporation; David Ehrlich, individual; City and County of Philadelphia; Geppert Brothers, Inc.; Curtis T. Bedwell & Sons, Inc.; and New Jersey Department of Environmental Protection; Chicago Insurance Company; the Home Insurance Company and the Mutual Fire, Marine & Inland Insurance Company, Defendants.

Civ. A. No. 83–4616 (SSB).

United States District Court, D. New Jersey.

Aug. 19, 1987.

Robert V. Paschon and Richard L. Costanzo of Paschon, Feurey & Rosetto, Toms River, N.J., for Gloucester Tp.

German, Gallagher & Murtagh by Edward C. German, Philadelphia, Pa. and Shackleton, Hazeltine & Buczynski, Ship Bottom, N.J., for Mutual Fire, Marine & Inland Ins. Co.

Vincent J. Pancari, Vineland, N.J., for Nationwide Mut.

John J. Spence, Haddonfield, N.J., for Curtis T. Bedwell & Sons, Inc.

Henry Jung, Home Ins. Co., Short Hills, N.J., for Home Ins. Co.

Francis K. Kearney, Maryland Cas. Ins. Co., Baltimore, Md., for Maryland Cas. Ins. Co.

Frank L. Napolitani, Farmer's Reliance Ins. Co. of North America, Lawrenceville, N.J., for Farmer's Reliance Ins. Co.

Sills, Beck, Cummis, Zuckerman, Radin & Tischman by Thomas S. Novak, Newark, N.J., for Intern. Fidelity.

DeGonge, Velardo & Garrity, Bloomfield, N.J., for Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

Secretary of State, State of N.J., State House Annex, Trenton, N.J., for Amadei Sand & Gravel, Inc.

White & Williams by Guy Cellucci, Philadelphia, Pa., for INA.

Gerald A. Hughes, Lawrenceville, N.J., for Maryland Cas. Co.

Kirkpatrick & Rathman by John G. Rathman, Rumson, N.J., for Farmer's Reliance Co. of N.J.

Charles G. Palumbo, Blackwood, N.J., State of N.Y., Ins. Dept. Liquidation Bureau, New York City, for Summit Ins. Co. of N.Y.

Marty M. Judge, Deputy Atty. Gen., Dept. of Law & Public Safety, Trenton, N.J., for State of N.J. Dept. of Environmental Protection Ins. Co.

Slimm, Dash & Goldberg by John L. Slimm, Westmont, N.J., for Home Ins. Co.

James D. Butler, Jersey City, N.J., for Chicago Ins. Co.

Martha Gale, Deputy City Sol., Law Dept., Philadelphia, Pa., for City and County of Philadelphia.

Bayh, Tabbert & Capehart by Donald A. Tabbert, Indianapolis, Ind., for U.S. Bonding Ins. Co.

Parker, McCay & Criscuolo, P.A. by David A. Parker, Marlton, N.J., for Gloucester Environmental Management Services, Inc., Anthony Amadei, Richard Winn, David Ehrlich.

Sterns, Herbert & Weinroth, P.A. by William J. Bigham, Trenton, N.J., for INA Ins. Co. (Twelfth Count only).

## OPINION

BROTMAN, District Judge:

### I.  INTRODUCTION

This matter comes before the court on the motions of defendant insurance companies for partial summary judgment.   For

the reasons stated below, defendants' motions are granted in part and denied in part.

## II. FACTS AND PROCEDURE

This action commenced as a declaratory judgment action filed by plaintiff, Township of Gloucester, ("Township"), to determine the existence and extent of defendant insurance companies' obligations to defend and indemnify plaintiff for expenses related to the closure and clean-up of the Gloucester landfill. The action was filed in state court and later removed to federal court, December 6, 1983. Four defendants, (Maryland Casualty Company, ("Maryland"), Farmer's Reliance Insurance Company, ("Farmer's"), Insurance Company of North America, ("INA") and Home Insurance Company, ("Home")), have filed partial summary judgment motions pursuant to Fed.R.Civ.P. 56(b). Plaintiff's complaint, dated April 21, 1982, and amended complaints, October 8, 1983, and December 2, 1983, ("Complaint"), allege the following periods of policy coverage under general liability policies by the defendants: Maryland, July 2, 1964–July 1, 1979, Count I; Farmer's, July 2, 1979–July 1982, Count II; INA, April 10, 1974–November 30, 1975, Count IV; INA, October 18, 1969–October 18, 1976, Count VI (plaintiff named as additional insured); INA, September 1, 1975—(no closing dated provided), Count VII (Gloucester Environmental Management Services ("GEMS") had a duty to name plaintiff as additional insured); Home, July 2, 1982–July 2, 1985, Count XVIII (Amended Complaint). Plaintiff's Complaint incorporates by reference the complaint of the New Jersey Department of Environmental Protection ("DEP") against the Township. *NJDEP v. Gloucester Environmental Management Services*, No. 84–152 (D.N.J. removal January 16, 1984) ("DEP Complaint"). DEP named the Township as a direct defendant in its third amended complaint, November, 1982. *See* Counts XI and XII (failure to properly close landfill, N.J.Stat.Ann. 13:1E–100 *et seq.*); Count XIII (N.J.Stat.Ann. 58:10A–1 *et seq.*); Count XIV (public and private nuisance); Count XVI (negligence); Count XVII (strict liability). The DEP seeks injunctive relief, penalties, and damages. *See* DEP Complaint ¶ 1.

The design, clean-up, and closure of all New Jersey sanitary landfills is mandated by the Sanitary Landfill Facility Closure and Contingency Act, N.J.Stat.Ann. 13:1E–100 *et seq*. The Township owns the land upon which the landfill in question rests. From 1969 to 1975 the Township leased the landfill to Amadei Sand and Gravel, Inc. ("Amadei"), which operated the landfill. In 1975 GEMS assumed control of the landfill and operated it until November, 1980. In November of 1980, The Superior Court of New Jersey, Appellate Division, ordered the closing of the facility.

The defendants filed summary judgment motions in the case at bar seeking an order declaring as a matter of law that defendants owe "no obligation to indemnify the Township for costs, fines or penalties relating to the closure and clean-up of the Gloucester Township landfill ('landfill') and other equitable relief" sought by DEP. All defendants support the motion with a legal argument that assumes arguendo that said policies were in effect as plaintiff so represents. Home makes an additional argument that it is not liable for indemnification because the "occurrence" in question took place prior to the term of its policy.

## III. DISCUSSION

### A. Standard of Review for Summary Judgment

The standard for granting summary judgment is a stringent one. Fed.R.Civ.P. 56(c) provides that summary judgment may be granted only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hersh v. Allen Prods. Co., Inc.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Insurance Co.,* 721 F.2d 118 (3d Cir.1983). In deciding whether an issue of material fact does exist, the court is required to view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 (3d Cir.1983); *Knoll v. Springfield Township School*

*District,* 699 F.2d 137, 145 (3d Cir.1983); *Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972).

B. Coverage under the Policies

Defendants' motions pertain to a duty to indemnify costs related to clean-up of the landfill. The court notes that the claim of DEP for damages under a *parens patriae* cause of action is not a subject of defendants' motions according to the defendants. *See, e.g.,* Motion of INA ¶ 4; *see also* Memorandum of Law of INA at 25 n. 12. The state may seek damages from the Township for damage caused to the state's natural resources (i.e. groundwater). INA's Memorandum of Law Exhibit O, *Jackson v. American Home Assurance Co.,* Nos. A–170–81T3, –502–81T3, –503–81T3, –504–81T3, –1274–81T3, slip op. at 188.5a (Super. Ct.N.J.App.Div. March 24, 1986) (*"Jackson,* Exhibit O") (citing *Lansco Inc. v. DEP,* 138 N.J.Super. 275, 283, 350 A.2d 520 (Ch. Div. 1975), *aff'd* 145 N.J.Super. 433, 368 A.2d 363 (App.Div.1976), *cert. denied,* 73 N.J. 57, 372 A.2d 322 (1977)).

The relevant language from the various insurance contracts is the standard general liability clauses. The key definitions are as follows:

"damages" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage

"occurrence" means an accident including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured

"property damage" means injury to or destruction of tangible property

The key coverage language is as follows:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigations and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

The key exclusion language is as follows:

The insurance does not apply ...

(i) to property damage to

(1) property owned or occupied by or rented to the Insured,

(2) property used by the Insured, or

(3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control

In determining the coverage under these policies, this court looks to applicable New Jersey law. It is not free to follow its own inclination as to how the state's common law should develop. *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894, 897 (3d Cir.1983). However, courts in this jurisdiction and outside this jurisdiction have reached opposite conclusions on the coverage question and provided varying rationales in support of such conclusions.

The basic approach to determine the initial duty of an insurance carrier to defend a policyholder is to lay the complaint against the policy to determine if the required allegations are made. *Burd v. Sussex Mutual Insurance Co.,* 56 N.J. 383, 388, 267 A.2d 7, 9–10 (1970); *Mt. Hope Inn v. Travelers Indemnity Co.,* 157 N.J.Super. 431, 437, 384 A.2d 1159 (Law Div. 1978). The court will undertake a similar exercise to determine if as a matter of law the defendants have no duty to indemnify the plaintiff's costs of closure and clean-up and associated fines and penalties.

Defendants make four basic arguments in support of their contention that there is no duty to indemnify. They are: (1) clean-

up and closure costs are not "damages" under the insurance contract, (2) such costs are not indemnifiable under the "ownership" exclusion of the contract, (3) closure is a certainty and not a risk, and (4) fines and penalties are not "damages" under the contract and to indemnify such costs would violate public policy.

1. Damages

The comprehensive general liability ("CGL") policies in question require indemnification for "all sums which the insured shall become legally obligated to pay as damages because of ... property damage...." Defendants argue that DEP seeks "equitable" (injunctive) relief from the Township in the underlying action rather than "legal" relief (damages). Defendants claim that the Township is thus excluded from CGL coverage. "Black letter insurance law holds that claims for equitable relief are not claims for 'damages' under liability insurance contracts." INA's Reply Brief Exhibit 2, *Maryland Casualty Co. v. Armco, Inc.,* 643 F.Supp. 430, 432 (D.Md.1986) (citations omitted); *see also Aetna Casualty and Surety Co. v. Hanna,* 224 F.2d 499, 503 (5th Cir.1955). A New Jersey court examining a similar coverage question concluded that the costs of closure incident to injunctive relief should not be indemnified. INA's Memorandum of Law Exhibit M, *Jackson v. American Home et al.,* opinion transcription (Super. Ct.N.J.Law Div. October 22, 1982) ("*Jackson,* Exhibit M"); *cf. United States v. Price,* 688 F.2d 204, 211–213 (3d Cir.1982) (Funding of diagnostic study of a public health threat may be considered equitable relief because it is preventive rather than compensatory.). On appeal, the *Jackson v. Home* court found that the underlying claim of the DEP did state a colorable claim under *parens patriae* for damages to the natural resources of the state. *Jackson,* Exhibit O at 188.5a–189a. However, the trial court distinguished a *parens patriae* claim for compensable damages from a claim pertaining to the injunctive costs of abatement, which required the installation of a new municipal water system. INA's Memorandum of Law Exhibit N, *Jackson v. American Home et al.,* opinion transcription at 214a–216a (Super.Ct.N.J.Law Div. June 23, 1981).

Other New Jersey courts have taken a different view of closure costs, rejecting the equitable relief/damages distinction as it applies to contaminated sites. *Solvents Recovery Service v. Midland Insurance Co.,* No. L–25610–83, slip op. at 5 (Super. Ct.N.J.Law Div. November 17, 1986) (supplemental submission by plaintiff); *see also* Plaintiff's Brief In Opposition Exhibit A, *Broadwell Realty Services, Inc. v. Fidelity and Casualty Co.,*[1] No. L–981194–84, slip op. at 4–5 (Super.Ct.N.J.Law Div. June 24, 1986). The *Solvents* court relied primarily on the reasoning of *United States v. Conservation Chemical Co.,* ("*CCC*"), 653 F.Supp. 152 (W.D.Mo.1986), a case involving similar facts to those alleged in the case at bar. *CCC* concerned a dump site where hazardous substance deposits caused injury to the site itself and the surrounding groundwater, surface water, and soil. *Solvents,* at 13 (citing *CCC,* at 189). The *CCC* court held that "where property of third parties is involved, clean-up costs incurred by or to be charged against, an insured constitute 'property damage' within the meaning of the term as used in a CGL insurance policy." *Solvents,* at 14 (citing *CCC,* at 191). The *CCC* court equated actions to recover clean-up costs with actions to recover damages to natural resources. "[F]ailure to undertake a remedy of the environmental contamination and damage would certainly have led to a clean-up by the United States government followed by an action seeking recovery of the clean-up costs." *Solvents,* at 15 (citing *CCC,* at 192–93); *see also Independent Petrochemical Corp. v. Aetna,* 654 F.Supp. 1334, 1348 (D.D.C.1986) ("sums denominated as 'clean-up' costs constitute damages for purposes of liability insurance

---

1. Defendants argue that *Broadwell* is not persuasive in part because the initial opinion relied on a New York case, *Bankers Trust Co. v. Hartford Accident Indemnity,* 518 F.Supp. 371 (S.D. N.Y.1981), which was vacated to allow for factual submissions, 621 F.Supp. 685 (S.D.N.Y.1981). However, the reasoning of *Broadwell* has been endorsed and cited in *Solvents.*

coverage"), (cited in *Solvents,* at 11, 16–17). The *Broadwell* court reached the same conclusion, resolving ambiguity in the coverage clause when applied to the cost of work done to prevent damage to an adjoining third party's property. *Broadwell,* at 4. The court found such a result to be consistent with public policy concerns. *Id.* at 5 ("Any other reading would subvert the pollution clean-up efforts of both the DEP and site owners attempting to comply with DEP dictates."). *See also E.C. Electro Plating Inc. v. Federal Insurance Company,* No. L–062919–85, slip op. 2–3, (Super. Ct.N.J.Law Div. April 15, 1987) (order); *Continental Insurance Companies v. Northeastern Pharmaceutical Co., Inc.,* 811 F.2d 1180 (8th Cir.1987).

The defendants also cite *Atlantic City Municipal Utilities Authority v. CIGNA,* No. A–1320–84T7, slip op. (Super.Ct.N.J. App.Div. December 19, 1985) in support of their position. *CIGNA* found no duty to indemnify for outlays to prevent imminent harm to third parties from leachate at the Price's landfill site. *Id.* at 3. However, *CIGNA* is distinguishable legally and factually from the case at bar. Atlantic City's expenditures "were to protect its *own* property, its drinking wells, surrounding ... sands ... and underground water supply." *Id.* at 4–5 (emphasis added). Gloucester Township must expend funds to repair its own property *and* that of third parties. Atlantic City was under no *legal obligation* to take clean-up measures; Gloucester Township is legally obligated to close the landfill and repair damage to the groundwater on site and around the landfill. *See generally* DEP Complaint.

▮ The defendants' "damages" argument brings into question the value of the equitable/damages distinction.

If the state were to sue in court to recover in traditional "damages," including the state's costs incurred in cleaning up the contamination, for the injury to groundwater, defendant's obligation to defend against the lawsuit and to pay damages would be clear. It is merely fortuitous from the standpoint of either plaintiff or defendant that the state has chosen to have plaintiff remedy the contamination problem, rather than choosing to incur the costs of cleanup itself and then suing plaintiff to recover these costs. *The damage to the natural resources is simply measured in the cost to restore the water to its original state.* (Citations to *Chemical Applications Inc. v. The Home Indemnity Co.* [425 F.Supp. 777 (D.Mass.1977)] *supra,* and *Lansco, Inc. v. Dep't. of Environmental Protection* [138 N.J.Super. 275, 350 A.2d 520 (Ch.Div.1975)] *supra* (Emphasis added).

*US Aviex Co. v. Travelers Ins. Co.,* 125 Mich.App. 579, 336 N.W.2d 838, 842–43 (1983). The opposing view is to hold fast to the distinction. *See Armco,* slip op. at 8 ("To adopt the reasoning of the *Aviex* decision is to adopt no reasoning at all."). The reality of toxic dump clean-up and the clean-up at issue in the case at bar requires repairs and preventive measures to environmental systems such as groundwater which do not follow property boundaries, but rather "flow" both on the property of the insured and third party neighbors. A legal cause of action exists to protect these resources. *Jackson,* Exhibit O, at 189a. It appears from the face of the DEP Complaint that such a claim is being made in the case at bar. Given the allegation of contamination of groundwater both on and off site, it is difficult to imagine how compliance with the DEP clean-up order and the assessment of damages could be neatly segregated into two separate categories, one for the third party and one for the first party. It is clear that the complaint contains allegations of damage to a third party's property. DEP Complaint at ¶ 62 ("continuing damages to surrounding ground and surface waters and threatening harm to health, safety and welfare of the people of the State of New Jersey"). Keeping in mind the court's responsibility to construe the contract against the insurer where there is doubt or ambiguity, *American White Cross Labs Inc. v. Continental Insurance Co.,* 202 N.J.Super. 372, 495 A.2d 152 (App.Div.1985), this court finds that costs of clean-up and closure do consti-

tute "damages" under the CGL policies at issue.

## 2. Ownership Exclusion

■ Defendants argue that even if clean-up and closure costs are "damages" under the contract, they are excluded because they result from damage to property owned by the insured. The applicable exclusion reads:

> This insurance policy does not apply ... (i) to property damages to (1) property owned or occupied by or rented by the insured.:...

For purposes of ruling on the motion before the court, it is not disputed that the Township owned the property during the relevant time frame. In construing exclusionary clauses, the court is obligated to interpret such clauses strictly and in favor of coverage. *See, e.g., Ruvolo v. American Casualty Co.,* 39 N.J. 490, 189 A.2d 204 (1963). The insurer has the burden of showing that exclusion is the only fair reading of the applicable clause. *Mt. Hope Inn,* 157 N.J.Super. 431, 384 A.2d 1159; *see also Filor, Bullard and Smyth v. INA,* 605 F.2d 598, 602 (2d Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1506, 59 L.Ed.2d 776 (1979).

It is undisputed that the policy covers "damages" to the insured resulting from property damage to a third party. It is also clear from the language of the policy that damage to the property of the insured is excluded. The question arises as to how to apply the coverage clause and the exclusion clause to expenditures made by the insured to both remedy property damage to a third party and prevent future damage. That is the nature of the relief sought by DEP against the Township. DEP Complaint ¶¶ 48, 62. Courts considering the question have reached opposite conclusions along the same lines of reasoning previously reviewed in the "Damages" discussion of this opinion. Again, defendants rely primarily on the cases of *Jackson* and *CIGNA,* and plaintiff relies on *Broadwell* and *Solvents.* The *CIGNA* case was distinguished earlier in this opinion on the law (Atlantic City faced no legal obligation to make remedial or preventive action, slip op at 3–5) and the facts (expenditures were made primarily to protect its own property, *id.*). The *Jackson* court viewed the closure of a contaminated landfill as impacting solely on the insured's own property. *Jackson,* Exhibit M, at 22. In looking at the closure of a site, the *Broadwell* court emphasized the toxic migration aspect of the property damage and found that the clean-up of the site itself on the insured's property came under the coverage clause. *Broadwell,* at 4. Similarly the *Solvents* court found that repairs to the site itself when made as an element of a comprehensive clean-up designed to remedy and prevent damage to a third party were covered by the policy. *Solvents,* at 17 (citing *Independent Petrochemical* at 21–22). These courts refuse to segregate the costs incurred in remedying the environmental damages resulting from the breakdown of and migration from a toxic landfill. *Solvents,* at 17 ("All of the costs incurred ... are either property damage or costs incurred because of property damage, and are therefore within the coverage....").

■ This court finds that the DEP Complaint alleges damages similar to those in *Solvents* (break-down and migration from the landfill), and adopts the comprehensive view of clean-up espoused by the *Solvents* court. In applying both the coverage clause and the ownership exclusion to the facts alleged in the DEP Complaint, this court finds ambiguity as to coverage for expenditures that the insured is legally obligated to make to comply with the DEP clean-up plan. *See generally Boswell v. Travelers Indemnity Co.,* 38 N.J.Super. 599, 606, 120 A.2d 250 (1956). The costs are inextricably linked to damage claims of a third party, yet the expenditures will be made in part to repair property owned by the insured. Ambiguity in the insurance contract is to be resolved in favor of the insured. *Aetna Insurance Co. v. Weiss,* 174 N.J.Super. 292, 416 A.2d 426 (App.Div. 1980). Therefore the court does not find that clean-up costs are excluded from coverage on the basis of the ownership exclusion clause of the contract.

### 3. Risk v. Certainty

Defendants argue they are entitled to an order finding no duty to indemnify for closure costs because the closure is not an "occurrence" under the policy. "Occurrence" is defined as:

an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

Defendants argue that the closure is mandated by statute, and is thus not a risk but a certainty.

■ The policy states that the question whether property damage is expected or intended must be viewed from "the standpoint of the Insured." *See generally Lansco,* 138 N.J.Super. at 282, 350 A.2d 520. The basic principle underlying the determination of an occurrence has been expressed as follows: "[C]overage will not be provided for intended results of intentional acts but will be provided for the unintended results of an intentional act." *Jackson v. Hartford Acc. & Indemn. Co.,* 186 N.J.Super. 156, 164, 451 A.2d 990 (1982) (construing pollution exclusion clause as a restatement of the definition of "occurrence"). Pollution by means of gradual permeation is no less an occurrence than that emitted by way of a sudden release. *Id.* at 165. The "occurrence" clause will act to prohibit coverage where it is shown that the insured polluter knew or should have known of the ongoing pollution. *Id.* at 164, 451 A.2d 990.

■ The Township landfill is a "sanitary landfill" under N.J.Stat.Ann. 13:1E–103. The underlying DEP Complaint alleges that the Township "knew or should have known that dangerous chemicals were leaching from the landfill into surrounding groundwater and surface waters," as of June of 1980, DEP Complaint ¶ 19, a date subsequent to the relevant periods of alleged coverage for three of the defendants. In light of the burden on the defendants under the policy definition of "occurrence" and the presumption in favor of the non-moving party under Rule 56, the record in its present state shows that the pollution damage was an "occurrence." *See Solvents,* at 4–5. Defendants' legal argument to the contrary relies primarily on the *Jackson* ruling that a closure operation does not encompass third party property damage, but is merely repair of the insured's own property. *See Jackson,* Exhibit M, at 21. This court rejects this position as applied to facts of the case at bar.

### 4. Fines and Penalties

■ Defendants also seek a declaration that defendants are not obligated as a matter of law to indemnify the Township for fines and penalties assessed by the DEP for violations of state environmental regulations. Fines and penalties are assessed against regulated entities for violations of state standards. *See generally* 73 C.J.S. *Public Administrative Law and Procedure,* § 68. Fines and penalties cannot be viewed as "damages" under the policy definitions and coverage clause. *Jackson,* Exhibit O, at 16; *see also Blair v. Anik Liquors,* 210 N.J.Super. 636, 510 A.2d 314 (1986) (indemnification for fines resulting from statutory violations violates public policy); Annotation, *Liability, Under § 311(b)(6) Of Federal Water Pollution Control Act ...,* 55 ALR Fed. 141 § 18 (1981) (no right to indemnification for civil penalties under Federal Water Pollution Control Act).

Under a contract theory, an insurance policy allows the insured to recover up to the amount of the policy plus interest. Shernoff, *Insurance Bad Faith Litigation* § 7.03[1] (1986); *see also Restatement of Contracts* § 330 (1932). Plaintiff, however seeks to recover the cost of fines and penalties imposed by DEP alleging that the non-compliance fines were caused in part by defendants' bad faith disclaimer of indemnification for clean-up costs. It is not clear whether those jurisdictions that recognize the tort of bad faith disclaimer would allow recovery of fines and penalties as compensatory damages. Shernoff, *Bad Faith,* § 7.04[2][b], (citing *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 579–80, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)). However, there is no authority under New Jer-

sey law to treat plaintiff's allegation as anything other than a contract breach. *Ellmex Construction Co., Inc. v. Republic Ins. Co.,* 202 N.J.Super. 195, 207–08, 494 A.2d 339 (1985); *Garden State Community Hospital v. Watson,* 191 N.J.Super. 225, 227–28, 465 A.2d 1225 (1982); *see also W.A. Wright v. KDI Sylvan Pools Inc.,* 746 F.2d 215, 217 (3d Cir.1984). Therefore plaintiff is limited to contractual recovery and may not receive coverage (indemnification) for the costs of fines and penalties as "damages" under the policy in question. Defendants' motion seeking a declaration that they are not obligated to indemnify plaintiff for fines and penalties is granted.

5. Occurrence Prior to Policy Period

Home's Reply Brief makes an additional argument for partial summary judgment based on the assertion that the "occurrence" alleged in the underlying DEP Complaint did not take place within the time period of the Home CGL policy at issue. Home makes this argument for the first time in its reply brief, dated October 8, 1986. Plaintiff Township did not object to the timing of this "new" argument in its letter memorandum submitted in response to the reply briefs of INA, Maryland, and Home, October 24, 1986. The Township did not make any argument in opposition to Home's "policy period" argument.

The landfill site was ordered closed by the Order of the Superior Court, Appellate Division, October 28, 1980. The DEP filed its original complaint October 20, 1980, seeking on and off site clean-up and compensatory damages. An amended complaint was filed March 20, 1981, and a second amended complaint, August 21, 1981. On April 22, 1982, the Township initiated a declaratory judgment action seeking indemnification from various insurers, and added Home as a defendant in an amended complaint, October 7, 1982. The policy term of the Home policy commenced July 2, 1982. Amended Complaint for Declaratory Judgment ¶ 121.

Defendant Home asserts that the Township knew of the toxic contamination and the associated legal liability prior to the term of the Home policy. An "occurrence" must take place "during the policy period." Defendant provides evidence from the state court pleadings indicating the Township's knowledge of the environmental contamination. *See, e.g.,* Reply Brief of Home at 6–9; Reply Brief Exhibit O (1980 EMA Report); Reply Brief Exhibit P (Geppert Interrogatories). The environmental contamination is the occurrence which serves as the foundation of the DEP suit and the declaratory judgment action. The Township's action was in fact filed prior to commencement of the policy term.

The CGL policy in question is an "occurrence policy" because a duty of indemnification arises from an occurrence within the policy period. *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.,* 676 F.2d 56, 60–61 (3d Cir.1982). As a plain reading of the policy indicates, "in order for an occurrence to qualify for coverage under this policy the damage must occur within the policy period." *Middle Dept. Inspection Agency v. Home Insurance Co.,* 154 N.J.Super. 49, 53, 380 A.2d 1165 (1977), *cert. denied,* 76 N.J. 234, 386 A.2d 858 (1978).[2] The underlying DEP Complaint does not allege damage during the term of the Home policy. *Continental Insurance Companies v. Northeastern Pharmaceutical Co.,* No. 84–5034–CV–S–4,

---

**2.** New Jersey has adopted the broadest "triple-trigger" theory of coverage. *Lac D'Amiante Du Quebec v. American Home Assurance,* 613 F.Supp. 1549, 1559–61 (D.N.J.1985) (citing *Keene Corporation v. Insurance Company of North America,* 667 F.2d 1034 (D.D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) (*Keene* concerned personal injury from asbestos exposure)). The theory holds that an "occurrence" takes place upon any of three events: (1) exposure causing damage, (2) manifestation of injury, or (3) development or progression of a latent injury. *Id.* at 1044–46; *Lac D'Amiante,* 613 F.Supp. at 1560–61 (applying triple trigger theory of coverage to property damage associated with asbestos). *But see Mraz v. Canadian Universal Insurance Co., Ltd.,* 804 F.2d 1325, 1328 (4th Cir.1986) (The *Mraz* court, applying Maryland law, has taken a more limited view of what constitutes a triggering event in the hazardous waste context finding that discovery of leakage and damage triggers coverage.).

slip op. at A (W.D.Mo. June 25, 1985) [Available on WESTLAW, DCT database]. It is clear, based on the record before the court, that the Township had actual knowledge of the occurrence prior to the Home policy period. In the case of the Home policy, this is not a situation where the Township could have reasonably expected that it "was free of the risk of becoming liable for injuries of which it could not have been aware prior to its purchase of insurance." *Keene,* 667 F.2d at 1046 (citation omitted). One cannot obtain insurance for a risk that the insured knows has already transpired. *See Presley v. National Flood Insurers Association,* 399 F.Supp. 1242, 1244 (E.D.Mo.1975); *see also Summers v. Harris,* 573 F.2d 869 (5th Cir.1978). Defendant Home's motion for summary judgment seeking an order that it not be liable for indemnification of the closure and clean-up costs is granted.

## IV. CONCLUSION

In conclusion, the motions of defendants seeking a partial summary judgment order that they need not indemnify is granted in part and denied in part. With the exception of defendant Home, the motions seeking such an order as to the costs of clean-up and closure are denied. However, the Home motion is granted on the basis of its argument that the "occurrence" did not take place during its policy term. The motion of all defendants seeking an order that they cannot be required to indemnify plaintiff for fines and penalties associated with the clean-up and closure is granted. An appropriate order will follow.

### ORDER

This matter having come before the court on motions of defendant insurance companies for partial summary judgment; and

This court having reviewed the submissions and oral arguments of the parties; and

For the reasons stated in this court's opinion filed this date;

IT IS on this 19th day of August, 1987, ORDERED that

1. The motion of defendants Insurance Company of North America, Maryland Casualty Company, and Farmer's Reliance Insurance Company, for partial summary judgment pertaining to the indemnification of clean-up and closure costs is DENIED.

2. The motion of defendant Home Insurance Company for partial summary judgment pertaining to the indemnification of clean-up and closure costs is GRANTED.

3. The motion of all defendants for partial summary judgment as it pertains to indemnification for fines and penalties is GRANTED.

No costs.